Harry JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–90–192–CR.

Court of Appeals of Texas,
Waco.

April 1, 1992.

Scott Peterson, Waco, for appellant.

Don W. Cantrell, County Atty., Roy De Friend, Asst. County Atty., Groesbeck, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON STATE'S MOTION FOR REHEARING

VANCE, Justice.

After our January 8, 1992, opinion was issued, the State filed a motion for rehearing, asserting that we had incorrectly designated aggravated assault as a second-

degree felony and that, because the facts show that Johnson could be guilty of only first-degree aggravated assault, no charge on aggravated assault was required. We scheduled oral argument on the State's motion. Because our earlier opinion was incomplete, we withdraw it and substitute this opinion.

Johnson was convicted by a jury of attempted capital murder; the judge sentenced him to life in prison. *See* TEX.PENAL CODE ANN. § 15.01 (Vernon Supp.1992) & § 19.03(a)(1) (Vernon 1989). By three points, he asserts that the court erred in failing to charge the jury on (1) the lesser-included offense of aggravated assault, (2) the lesser-included offense of reckless conduct, and (3) the law of self-defense. We will reverse the judgment and remand for a new trial.

## THE FACTS

The injured officer called the event an "unfortunate incident." Johnson, suffering from chronic undifferentiated schizophrenia, was a pauper and transient. As he passed through Mexia, he stopped outside the city hall and asked the chief of police if there was a Salvation Army office in town. When told there was none, he asked about other cities and walked away. The chief then heard him cursing and shouting—conduct described by one witness as ravings—and saw him pointing his finger back at the chief. The chief sent officer John Carter to "find out who he was," further instructing Carter to "check him out and if [he] was the one doing all the cussing, get him out of the downtown area or do what [you need to do] to take care of business there." Carter stopped Johnson along the railroad tracks and told Johnson he wanted to talk to him. Johnson walked on. Carter said that Johnson cussed him, saying, "I don't want to talk to you. What do you want to talk to me for?" After Johnson said that twice, Carter decided to arrest him for "disorderly conduct."

The witnesses agreed that Carter approached Johnson and grabbed his arm. Johnson's coat sleeve came off; Carter lost his footing and fell into a muddy ditch. The last thing Carter could remember was falling backwards. The testimony of the witnesses was contradictory about whether Johnson fell into the ditch with Carter, when he got Carter's gun, and where he was when he shot Carter. Carter testified that the "snapper," the strap holding the gun in the holster, was broken. Carter was hit twice with hollow-point bullets from his .357 magnum.

Johnson's written statement, which was admitted into evidence, said in part:

I go out toward the railroad track to go back down the track. That is the way I came in last night. So as I am going down this area, I am about to reach this overpass or tressel. All of a sudden I feel something grabs on my right arm and something pushes me over the back of my head. At the same time, he is hooking under my leg to try to pull me over some kind of way. I am trying to find out what is going on. I asked him what he was doing and why was he hitting on me. He did not make any reply, but continued to put his fists on the side of my face and started grabbing on my arm. Somehow, he was moving around me, twisting my coat and grabbing up around my neck. It was coming into a wrestling. I guess he was trying to wrestle me to the ground. I was trying to push away from him. He wrestled me to the ground. I saw his gun on my left hand side and I reach for the gun and picked it up and shot the gun twice. When I shoot the gun, all of a sudden he straightened himself up. The guy who was shot was laughing. I do not know what he did from there. I got off from the ground. I saw some people on the side. I throwed the gun to the ground and just remained there. After a second or so, the police had come up.

The court charged the jury on the lesser-included offenses of attempted murder and attempted voluntary manslaughter and on the defense of insanity. Johnson's points attack the court's denying his request for charges on the lesser-included offenses of aggravated assault and reckless conduct and a charge on self-defense.

■ Error in the charge, if subject to a timely objection, requires reversal if the error is "calculated to injure the [appellant's] rights," meaning there need only be "some" harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985). In defining "some" harm, the Court of Criminal Appeals states "the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986). Johnson objected to the failure to charge on aggravated assault.

### LESSER–INCLUDED OFFENSES

The elements of attempted capital murder that the State alleged in the indictment are (1) an attempt (2) to intentionally and knowingly (3) with the specific intent to commit the offense of capital murder (4) shoot with a handgun (5) an individual (6) who was a peace officer (7) acting in the lawful discharge of an official duty (8) whom Johnson knew to be a peace officer. *See* Tex.Penal Code Ann. § 15.01 (Vernon Supp.1992) & §§ 19.02, 19.03 (Vernon 1989).

An offense is a lesser-included offense of an offense charged in an indictment if: (1) it is established by proof of the same or less than all facts required to establish the greater offense, (2) it differs from the greater offense only in the respect that proof of a less serious injury or risk of injury is sufficient to establish it, (3) it differs from the greater offense only in the respect that proof of a less culpable mental state is sufficient to establish it, or (4) it consists of an attempt to commit the greater offense. Tex.Code Crim.Proc.Ann. art. 37.09 (Vernon 1981). A defendant charged with an offense (the "greater offense") which has lesser-included offenses may be found not guilty of the offense charged in the indictment but guilty of any lesser-included offense. *Id.* at art. 37.08.

■ Once the jurisdiction of the court has been properly invoked, the court may proceed to judgment upon any lesser-included offense that is determined from the offense charged and the facts of the case. *Cunningham v. State,* 726 S.W.2d 151, 153 (Tex.Crim.App.1976); *Mello v. State,* 806 S.W.2d 875, 877 (Tex.App.—Eastland 1991, pet. ref'd). The elements of each lesser-included offense are considered to have been alleged within the elements of the indictment alleging the greater offense. *Id.* That an indictment contains one or more included offenses does not render that indictment duplicitous. *Stockton v. State,* 756 S.W.2d 873, 876 (Tex.App.—Austin 1988, no pet.).

■ In determining whether a jury must be instructed on a lesser-included offense, a two-step analysis must be applied. *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim.App. [Panel Op.] 1981) (on rehearing). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* Second, there must be some evidence in the record showing that, if the defendant is guilty, he is only guilty of the lesser offense. *Id.; see also Moreno v. State,* 702 S.W.2d 636, 640 (Tex.Crim.App.1986). The determination must be made on a case-by-case basis because the statute defines lesser-included offenses in terms of the offense charged and the facts of the case. *Ex parte McClelland,* 588 S.W.2d 957, 959 (Tex. Crim.App.1979); *Mello,* 806 S.W.2d at 878. We must determine if there is some evidence in the record showing that, if Johnson is guilty, he is only guilty of a lesser offense. *See Moreno,* 702 S.W.2d at 640.

Aggravated assault is usually a third-degree felony. However, if the offense is committed against a peace officer with the use of a deadly weapon, it is a first-degree felony. Tex.Penal Code Ann. § 22.02(c) (Vernon Supp.1992). A person is presumed to know that the person assaulted is a peace officer if the officer was wearing a distinctive uniform of his employment. *Id.* at § 22.02(b) (Vernon 1989).

AGGRAVATED ASSAULT–THIRD DEGREE

■ The elements of third-degree aggravated assault, as applied to these facts, are (1) intentionally, knowingly, or recklessly

(2) commit an assault (3)(a) causing serious bodily injury, or (b) using a deadly weapon. *See id.* at § 22.01 (Vernon 1989) & § 22.02 (Vernon Supp.1992).

Johnson argues that the evidence raises an issue of his lack of intent to kill, which is the difference between a conviction for attempted capital murder and aggravated assault. The State relies on *Godsey* for the proposition that the defendant's deliberate pointing of a gun at peace officers was evidence of his intent to kill. *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim. App.1986). Although it is true that the court said that Godsey's actions manifested only an intent to kill and did not evidence a mere threat, the court stressed that the effect of Godsey's position at trial was "I was not there so I could not intend to kill anyone." *Id.* at 584–85. If his position were accepted as true, Godsey would have been guilty of no offense. *Id.* at 584. The opinion points out that the statements by which Godsey attempted to negate intent to kill could not be considered in a vacuum, but must be considered in the context of the facts. *Id.* Thus, Godsey's statements to the effect that he could not have intended to kill *because he was not there* did not fit within the context of the other facts of the offense and could not amount to some evidence of the lesser offense. *Id.* (emphasis provided).

When we examine all of the evidence to determine in the context of the facts if this lesser-included offense was raised, the manner in which Carter approached Johnson, the scuffle which ensued, and Johnson's statement about the events lead us to the conclusion that there is some evidence that Johnson did not have an intent to kill Carter. In addition, the circumstances under which Carter approached Johnson would justify a jury in finding that the State did not prove that Johnson knew that Carter was a peace officer. Therefore, there is some evidence in the record that, if Johnson is guilty, he is only guilty of third-degree aggravated assault. The jury should have been so charged.

### AGGRAVATED ASSAULT–FIRST DEGREE

The elements of first-degree aggravated assault, as applied to these facts, are (1) intentionally, knowingly, or recklessly (2) commit an assault (3) using a deadly weapon (4) causing bodily injury to (5) a peace officer (6) who is lawfully discharging an official duty and (7) whom the defendant knows or has been informed is a peace officer. *See* TEX.PENAL CODE ANN. § 22.01 (Vernon 1989) & § 22.02 (Vernon Supp. 1992).

The State contends that, if Johnson was guilty of aggravated assault, he was guilty of the first-degree offense, rather than the third-degree offense. It argues that, because both crimes are first-degree felonies, Johnson was not harmed by the failure to charge the jury on aggravated assault. *See* TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981). In support of this position, it says that the evidence that Carter was injured and that Johnson used a deadly weapon was uncontroverted and points to the presumption that Johnson knew that Carter was a peace officer because Carter was wearing a peace officer's distinctive uniform. *See* TEX.PENAL CODE ANN. § 22.-02(b) (Vernon 1989). It further contends that, because Johnson was indicted for a first-degree felony, first-degree aggravated assault cannot be a "lesser" included offense. Additionally, the State reminds us that a charge on first-degree aggravated assault would entitle it, the State, to an instruction on the presumption—an instruction to which it is not entitled on the charge of attempted capital murder—thereby lessening its burden of proving the attempted capital murder.

The determination of whether an offense is a lesser-included offense of the offense charged is made without regard to punishment; one offense may be a lesser-included offense of another even if it carries the same penalty. *Mello,* 806 S.W.2d at 878. The included offense need not be "lower" in the sense that it provides a lesser punishment. *Stockton,* 756 S.W.2d at 876. The word "lesser" does not refer to the punishment range but to the factor that distinguishes the included of-

fense from the offense charged, i.e., less than all facts, less serious injury or risk of harm, less culpable mental state, or an attempt. *Id.* Nothing in article 37.09 is inconsistent with this observation. *Id.;* TEX.CODE CRIM.PROC.ANN. art. 37.08 (Vernon 1981). Thus, under proper facts, first-degree aggravated assault can be a lesser-included offense of attempted capital murder, also a first-degree offense.

■■■ When we examine all of the evidence to determine in the context of the facts if this lesser-included offense was raised, we conclude again that there is some evidence that Johnson did not have an intent to kill Carter and that the circumstances are such that a jury could conclude that Johnson was in a position to see Carter's uniform and, using the presumption, that he knew Carter was a peace officer. Therefore, the record contains evidence that, if Johnson is guilty, he is only guilty of first-degree aggravated assault. The jury should have been so charged.

On retrial, an instruction that Johnson is presumed to have known that Carter was a peace officer because he was wearing a distinctive uniform should not be given unless there is sufficient evidence of the facts that give rise to the presumption. *See* TEX.PENAL CODE ANN. § 2.05 (Vernon Supp. 1992) & § 22.02(b) (Vernon 1989). If the State elects to proceed with a charge of attempted capital murder and if there is sufficient evidence of the facts that give rise to the presumption, the court must fashion an instruction which will authorize the jury to apply the presumption only to the charge of first-degree aggravated assault and not to other offenses which do not carry the same statutory presumption. *See id.*

We sustain point one.

RECKLESS CONDUCT

■■■ The elements of reckless conduct are (1) recklessly engaging in conduct (2) that places another in imminent danger of serious bodily injury. TEX.PENAL CODE ANN. § 22.05 (Vernon 1989). Reckless conduct may be a lesser-included offense of aggravated assault. *See, e.g., Mullins v. State,* 767 S.W.2d 166, 169 (Tex.App.—

Houston [1st Dist.] 1988, no pet.). Here, the elements which would ordinarily distinguish the offenses—serious bodily injury or the use of a deadly weapon—are undisputed. The element of recklessness is common to both offenses. Thus, if Johnson is guilty of reckless conduct, he is also guilty of third-degree aggravated assault. *See* TEX.PENAL CODE ANN. § 22.02 (Vernon Supp.1992) & § 22.05 (Vernon 1989). Under the facts of this record, a charge on the lesser-included offense of reckless conduct was not necessary. We overrule point two.

SELF–DEFENSE

Johnson complains that he was denied a charge on self-defense. Because we are reversing the judgment for failure to include the lesser-included offense of aggravated assault in the charge, we conclude that we should not decide this question. *See Mullins,* 767 S.W.2d at 169. The evidence is not well developed about the statutory or other justification that Carter may have had for arresting Johnson. Because the evidence on the issue of self-defense that will be presented at the new trial may not be identical to that presented at this trial, we deem it inappropriate to comment further on point three. *See id.*

The State's motion for rehearing is overruled. We reverse the judgment and remand the cause for a new trial.