Felicia Ann Mendoza v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-007-CR

     FELICIA ANN MENDOZA,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 95-514-C
                                                                                                                

O P I N I O N
                                                                                                                

      A jury convicted Appellant Felicia Ann Mendoza of aggravated robbery and assessed her
punishment at twenty-five years’ imprisonment in the Institutional Division of the Texas
Department of Criminal Justice and a $1,000 fine. See Tex. Pen. Code Ann. § 29.03 (Vernon
1994). She appeals on two points, asserting that her trial counsel rendered ineffective assistance
and that the trial court improperly denied her motion for mistrial based on the State’s cross-examining her about her post-arrest silence. We will reverse the judgment and remand this cause
for further proceedings.
FACTUAL BACKGROUND
      The State charged Mendoza with attempted capital murder of Helen Brooks. At a bond-reduction hearing, Mendoza took the stand, testifying among other things about her family
relationships and her ability to make bail. On cross-examination, the prosecutor asked Mendoza
whether she had attempted to take Brooks' purse and whether she held a gun, and inquired about
other details of the offense. Mendoza's counsel did not object to these questions. As a result,
Mendoza judicially confessed to aggravated robbery.
      Mendoza testified at trial that she robbed Brooks while under duress. The jury rejected her
defense but convicted her of the lesser offense of aggravated robbery. After the conviction,
Mendoza's family retained new counsel, who filed a timely motion for new trial. In her motion
for new trial, Mendoza raised an ineffective assistance of counsel claim. She argued that trial
counsel's failure to adequately advise her about testifying at the bond hearing and counsel’s failure
to object during cross-examination precluded her from challenging her identification as the
primary actor in the offense and from asserting any other defense except duress. She requested
a hearing on her motion for new trial, arguing that her allegations could not be determined from
the record.
      The trial court did not set a hearing for Mendoza’s motion for new trial, and it was overruled
by operation of law. In a previous opinion, this Court remanded this cause to the trial court for
a hearing on the motion for new trial. Mendoza v. State, 935 S.W.2d 501, 504 (Tex. App—Waco
1996, no pet.). On remand, the trial court conducted the hearing and overruled the motion.
COMMENT ON POST-ARREST SILENCE
      In her second point, Mendoza contends that the court erred in refusing to grant a mistrial after
the State improperly cross-examined her concerning her post-arrest silence. The State responds
that the court’s instructions to disregard the questions at issue cured any error arising therefrom
and thus the court properly denied Mendoza’s request for a mistrial.
The Pertinent Facts
      Mendoza testified on direct examination that Rocky and Louis Munos, Amy Handy, and
herself drove to the Target Store where Brooks was shot. She described her relationship with
Louis as “intimate.” She testified that upon arrival Rocky directed Louis to steal the purse from
a lady who was putting her purchases in the trunk of her car. After Louis refused, Rocky pointed
a handgun “somewhere toward [Louis’] chest” and threatened to shoot him if he did not steal the
purse. According to Mendoza, Rocky began counting to three. Mendoza feared that Rocky would
shoot Louis, so when he got to “two,” she agreed to steal the purse.
      Before she could do anything however, the lady drove away from the parking lot. Mendoza
testified that Rocky then spotted Brooks and drove his truck over beside Brooks’ car. He “started
shoving” Mendoza out of the truck and gave her his handgun. Mendoza confronted Brooks,
demanding her purse. The women struggled over the purse; Mendoza shot Brooks and took
possession of the purse. Mendoza testified that she did not intend to shoot Brooks and that the gun
must have discharged by accident. She contends that she shot Brooks while acting under duress
from Rocky’s threat to Louis. See Tex. Pen. Code Ann. § 8.05(a) (Vernon 1994) (a person acts
under duress if she “was compelled to [engage in the proscribed conduct] by threat of imminent
death or serious bodily injury to [herself] or another.”).
      Mendoza claims that the following cross-examination by the State improperly referred to her
post-arrest silence:
      Prosecutor:  Eight months, two days ago you shot Helen Brooks. Seven months and two
days ago. Tell this jury how many times you’ve called Helen Brooks to
apologize for shooting.
 
Counsel:Your Honor, may I—first of all, I object. That is improper.
 
      The Court:   And I sustain the objection. Instruct the jury to disregard the last statement [sic]
any purpose whatsoever.
 
      Counsel:      And, your Honor, I would—as required by law, I respectfully request a mistrial.
 
      The Court:   Overrule the motion for mistrial.
 
      Prosecutor:  Mrs. Mendoza, you’ve been in jail seven months, two days?
 
      Mendoza:    Yes, sir.
 
      Prosecutor:  How many times have you called the Waco Police Department to talk to a
detective about this case?
 
      Counsel:      Your Honor, again—
 
      The Court:   Let me see you all. We need to be on the record. I instruct the jury to
disregard [sic] last statement for any purpose.
 
(In chambers, outside of the presence of the jury)
 
      The Court:   Now we’re on the record outside the presence and hearing of the jury. Do not
ask that question again in the presence of the jury.
 
      Prosecutor:  Yes, your Honor.
 
      Counsel:      Your Honor, before we go, your Honor, at this time I would ask for a mistrial
on the grounds my client has a right to remain silent and not give any statements
for the police. The State has violated that. And as a result of that, I have no
other choice but to ask for a mistrial.
 
      The Court:   At this time I overrule the motion for mistrial.

      (In the presence of the jury)
 
      Prosecutor:  Pass the witness, your Honor.
 
      Counsel:      Your Honor, may I again, based upon the last question asked and the direction
that you gave to the jury, I would respectfully request a mistrial at this time.
 
      The Court:   All right. I overrule the motion for mistrial. I again instruct the jury that they
will not consider the last statement made by the State’s attorney for any purpose
whatsoever.
At this point the defense rested and both sides closed.
The Applicable Law
      The State cannot use the post-arrest silence of an accused against him at trial “to impeach an
explanation subsequently offered at trial.” Doyle v. Ohio, 426 U.S. 610, 618, 96 S. Ct. 2240,
2245, 49 L. Ed. 2d 91 (1976); accord Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim. App.
1986); Thomas v. State, 812 S.W.2d 346, 349-50 (Tex. App.—Dallas 1991, pet. ref’d). To do
so violates the rights of the accused under the Fifth Amendment of the United States Constitution
and Article I, Section 10 of the Texas Constitution. Doyle, 426 U.S. at 617-18, 96 S. Ct. at 2244-45; Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995); Sanchez, 707 S.W.2d at 578;
Nixon v. State, 940 S.W.2d 687, 692 (Tex. App.—El Paso 1996, pet. ref’d).
      The harm flowing from a comment on the accused’s post-arrest silence can be cured by an
effective instruction to disregard. Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). 
In Waldo, the Court considered five factors in determining whether the curative instruction was
effective:
      •    the persistence of the prosecution in commenting on the accused’s silence;
      •    the flagrancy of the violation;
      •    the particular instruction given;
      •    the weight of the incriminating evidence; and
      •    the harm to the accused as measured by the severity of the sentence.
Id. at 754. Although the Court declined to adopt these factors as exhaustive or definitive, it did
rely on them in determining the effectiveness of the instruction at issue. Id. at 754-57. We will
utilize these factors as well. See Fletcher v. State, 852 S.W.2d 271, 275-76 & n.5 (Tex.
App.—Dallas 1993, pet. ref’d) (court utilized Waldo factors while recognizing that the Court of
Criminal Appeals had declined to specifically adopt them).
Application of the Law to the Facts
      Both sides agree that the questions at issue improperly commented on Mendoza’s post-arrest
silence. Thus, we must decide whether the court’s instructions effectively cured this error. See
Waldo, 746 S.W.2d at 754.
1. The Prosecutor’s Persistence—Flagrancy



      The prosecutor improperly inquired into Mendoza’s post-arrest silence when he asked her how
many times she had called Brooks and apologized. See Dinkins, 894 S.W.2d at 356. The trial
court promptly instructed the jury to disregard this question but overruled Mendoza’s request for
a mistrial. Not to be dissuaded however, the prosecutor then asked Mendoza how may times she
had contacted the police to talk to a detective about the case. This question similarly constituted
an improper inquiry into Mendoza’s post-arrest silence. Id.
      Before Mendoza’s counsel could utter four words, the court summoned counsel into chambers
for a hearing outside the presence of the jury. At the same time, the court instructed the jury to
disregard the second question. In chambers, the court sternly admonished counsel for the
prosecution, “Do not ask that question again.” Before the jury, the court overruled Mendoza’s
motion for mistrial a second time but again instructed the jury to disregard the question.
      The record suggests that the prosecutor persistently and flagrantly pursued this improper line
of inquiry when he ignored the court’s first ruling and repeated the question, albeit in different
form. Cf. Waldo, 746 S.W.2d at 755 (violation not persistent as the prosecutor’s restated question
did not concern post-arrest silence); Fletcher, 852 S.W.2d at 274-75 (improper question asked
only once).
2. The Particular Instruction
      The court promptly instructed the jury not to consider the prosecutor’s improper questions on
both occasions. The court also sua sponte admonished the prosecutor not to persist in the 
offensive line of questioning. Thus, the court did all that it could to cure the error, short of
declaring a mistrial.
3. Weight of the Evidence
      The testimony established that the person who robbed Brooks came from the truck in which
Mendoza, Rocky, Louis, and Handy were the only passengers. Brooks testified that she was
robbed by a female, thus limiting the potential robbers to Mendoza and Handy. After being
granted immunity from prosecution, Handy testified that Mendoza was the person who robbed
Brooks. Brooks could not identify Mendoza from a photo line-up but identified her at trial as the
person who had robbed her. She also testified that she had seen a photograph of Mendoza on
television prior to trial. A police officer testified that Mendoza fled on foot from him and
attempted to hide as he gave pursuit.
      Although the reliability of Brooks’ identification of Mendoza might be questioned, the totality
of the evidence other than Handy’s testimony more than suffices to corroborate this accomplice
testimony and prove Mendoza’s guilt. See Cooper v. State, 631 S.W.2d 508, 509-11 (Tex. Crim.
App. 1982); Chandler v. State, 743 S.W.2d 736, 739-41 (Tex. App.—Corpus Christi 1987), rev’d
on other grounds, 790 S.W.2d 635 (Tex. Crim. App. 1990).
4. Severity of Punishment
      The jury found Mendoza guilty of aggravated robbery, a lesser offense than that with which
she was charged. The penalty for aggravated robbery is five to ninety-nine years or life and a fine
of not more than $10,000. See Tex. Pen. Code Ann. §§ 12.32, 29.03(b) (Vernon 1994). The
jury sentenced Mendoza to 25 years’ imprisonment and a $1,000 fine, rejecting her request for
community supervision.
5. Summary
      Three of the five factors suggest that the court’s instructions were effective to cure the error
arising from the prosecutor’s improper reference to Mendoza’s post-arrest silence. Although it
is unlikely that the misconduct affected Mendoza’s punishment, we cannot say with equal
confidence that the persistence and flagrancy with which the prosecutor engaged in this wholly
inappropriate interrogation did not impact her conviction. Thus, we conclude that the court’s
instruction did not effectively cure the error of this blatant misconduct. Accordingly, we must
determine whether Mendoza was harmed by this error. See Dinkins, 894 S.W.2d at 356.
Harm Analysis
      As stated above, a comment on the accused’s post-arrest silence violates the constitutional
rights of the accused. Rule 44.2(a) of our Rules of Appellate Procedure provides that we must
reverse a conviction for constitutional error unless we determine beyond a reasonable doubt that
the error made no contribution to the appellant’s conviction or punishment. Tex. R. App. P.
44.2(a). This continues the harmless error standard of the former rule 81(b)(2).


 Tex. R. App.
P. 81(b)(2), 49 Tex. B.J. 581 (Tex. Crim. App. 1986, repealed 1997).
      In examining the record to assess harm, we consider:
      •    the source and nature of the error;
      •    the extent to which the State emphasized it;
      •    the weight a juror would probably place upon it; and
      •    whether declaring the error harmless would encourage the State to repeat it with
impunity.
Dinkins, 894 S.W.2d at 356; Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).
      The State is the source of this error, which constituted a persistent and flagrant attack on
Mendoza’s right against self-incrimination. After the court sternly admonished the prosecutor,
the error received no further emphasis. However, it is noteworthy that this error occurred at the
conclusion of the evidence; it was the last thing the jury heard before final argument. The jury
probably placed little weight on the prosecutor’s improper questions, considering that the jurors
convicted Mendoza of a lesser offense and did not assess the maximum punishment.
      The State assures us that this error will not be repeated. The State suggests that several of
the prosecutors in its office have been confused about the propriety of inquiry into the post-arrest
silence of the accused and now understand that this is improper. Although we appreciate the
State’s candor, we cannot ignore the fact that the prohibition on commenting or inquiring into the
post-arrest silence of the accused has been the settled law of the land for at least twenty years. See
Doyle, 426 U.S. at 617-19; 96 S. Ct. at 2244-45 (1976 decision). The prosecution’s ignorance
of the law is no defense. Cf. Lugo v. State, 923 S.W.2d 598, 604 (Tex. App.—Houston [1st
Dist.] 1995, no pet.); Tex. Pen. Code Ann. § 8.03(a) (Vernon 1994) (ignorance of the law is no
defense to prosecution).
      For these reasons, we cannot say beyond a reasonable doubt that the prosecutor’s misconduct
did not contribute to Mendoza’s conviction. Thus, we sustain her second point.
THE BOND HEARING
      In Mendoza’s first point, she contends that the court erred in overruling her motion for new
trial on the basis of ineffective assistance of counsel. The State responds that Mendoza’s counsel
was pursuing a rational trial strategy and that the result of the case would not have been any
different had counsel not engaged in the conduct alleged to be ineffective.
      At the bond-reduction hearing, Mendoza testified about her family relationships and her
ability to make bail. On cross-examination, the prosecutor asked Mendoza whether she had
committed the offense and inquired about the details of the offense. Mendoza's counsel did not
object to this cross-examination, which is improper under rule 104(d) of the Rules of Criminal
Evidence. Ex parte Homan, No. 12-96-230-CR, slip op. at 3, 1996 WL 741817, at *2 (Tex.
App.—Tyler Dec. 30, 1996), pet. dism’d, improvidently granted, No. 164-97, 1998 WL 104564
(Tex. Crim. App. Mar. 11, 1998); Tex. R. Crim. Evid. 104(d). As a result, Mendoza judicially
confessed to aggravated robbery.
      Mendoza filed an affidavit in support of her motion for new trial. Her affidavit states that
before the bond-reduction hearing, trial counsel told her that Brooks had identified her as the
robber. After the hearing, however, Mendoza learned that Brooks had not been able to identify
her. Mendoza further asserts that she would not have testified about her part in the robbery if she
had known that Brooks had not identified her. She also contends that her attorney did not tell her
that her testimony could be used against her at trial or that she did not have to testify at the bond-reduction hearing.
      Rocky, Louis, and Handy had let Mendoza out of the truck while an officer followed and then
drove on a little further. Mendoza fled the officer who apprehended her and took her in custody. 
The officer then crossed the street to investigate the truck which the others had parked. He found
Brooks’ purse strewn about near a curb in an apartment complex parking lot. Other officers found
Rocky, Louis, and Handy hiding in an apartment that was being used for storage. Officers
recovered the weapon used in the commission of the offense in the same apartment where these
three were found hiding. The State offered Handy immunity from prosecution in exchange for her
testimony against Mendoza.
      In assessing the effectiveness of counsel, we apply the test set forth by the Supreme Court in
Strickland v. Washington. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984); Ex parte Jarrett, 891 S.W.2d 935, 938 (Tex. Crim. App. 1994). 
Strickland requires us to determine whether:
(1) counsel's performance was deficient; and if so,
(2) whether there is a reasonable probability the results would have been different but for
counsel's deficient performance.
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.
      We strongly presume that counsel's conduct lies within the "wide range of reasonable
representation." McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), cert. denied,
___ U.S. ___, 117 S. Ct. 966, 136 L. Ed. 2d 851 (1997). The accused must overcome this
presumption by affirmatively showing that his representation fails the two-part test set forth in
Strickland. Id.
      As Mendoza’s appellate counsel suggests, if trial counsel had fully investigated the strength
of the State’s case before the bond hearing, she might have discovered that Brooks had not yet
identified Mendoza as the robber. Counsel did not do this, however, and as a result, according
to Mendoza, Mendoza judicially confessed to the offense. A failure to fully investigate the State’s
case can constitute deficient assistance. See McFarland, 928 S.W.2d at 501; Ex parte Welborn,
785 S.W.2d 391, 393 (Tex. Crim. App. 1990).
      Counsel rendered deficient assistance by failing to fully investigate the strength of the State’s
case. As a result of this deficiency, Mendoza’s complicity was admitted to the jury in her opening
statement. The jury convicted Mendoza of a “lesser-included” offense which carries the same
range of punishment as the offense for which the State indicted her.


 Thus, it is difficult to
conceive of this confession and avoidance “tactic” as sound trial strategy.
      Accordingly, we conclude that Mendoza’s trial counsel rendered deficient assistance which
affected the outcome of her case. The State suggests that because it did not employ Mendoza’s
pretrial testimony during her trial, the improperly obtained confession did not affect the trial. We
disagree. Mendoza’s trial strategy began with the concession that Mendoza had shot Brooks and
focused on convincing the jury to find that she acted under duress, even though Mendoza
possessed the only weapon at the time of the robbery and Rocky’s threat to Louis was in the past. 
See Kessler v. State, 850 S.W.2d 217, 221-222 (Tex. App.—Fort Worth 1993, no pet.) (duress
requires present threat of death or serious bodily harm, not past or future threat).
      For these reasons, we sustain Mendoza’s first point.
RETRIAL
      Because Mendoza’s improperly obtained confession remains potentially admissible, we must
address the propriety of its use on retrial. See Cook v. State, 940 S.W.2d 623, 627-28 (Tex.
Crim. App. 1996) (Court discussed admissibility of certain evidence in the event the State decided
to retry appellant). Mendoza’s pretrial confession is tantamount to a statement obtained in violation
of an accused’s Fifth Amendment privilege against self-incrimination. It is not admissible on
retrial, unless Mendoza testifies in a manner contrary to her confession. In that event, Mendoza’a
prior testimony would be potentially admissible to impeach her. See Huffman v. State, 746
S.W.2d 212, 220-21 (Tex. Crim. App. 1988); Tex. Code Crim. Proc. Ann. art. 38.22, § 5
(Vernon 1979) (voluntary


 custodial statement can be used for impeachment purposes).
CONCLUSION
      We have sustained Mendoza’s two points of error. Accordingly, we reverse her conviction
and remand this cause to the trial court for further proceedings consistent with this opinion.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice


Before Chief Justice Davis
            Justice Cummings and
            Justice Vance
Reversed and remanded
Opinion delivered and filed December 10, 1997
Publish