# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00464-CR

**Jonathon Gene Benavides, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2004-167, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jonathon Gene Benavides of the offense of solicitation of capital murder. *See* Tex. Penal Code Ann. § 15.03(a) (West 2003). Punishment was assessed at sixty years' confinement and a $5,000 fine. In four issues on appeal, Benavides asserts that the district court abused its discretion in denying his motion to sever and in permitting the State to ask him certain questions about his defensive theory during the severance hearing, challenges the factual sufficiency of the evidence, and claims ineffective assistance of counsel. We will affirm the district court's judgment.

## BACKGROUND

Benavides and Samantha Childs were both indicted for soliciting the murder of Benavides's ex-girlfriend, Stacy Satterfield. Prior to trial, the State moved to consolidate Benavides's and Childs's indictments. Benavides filed a motion to sever, asserting that the defenses

that he and Childs intended to assert at trial were antagonistic and mutually exclusive. The district court held a severance hearing. Benavides's counsel of record, Glen Peterson, was unable to attend this hearing. Instead, Benavides was represented at the hearing by Steve Moninger. Following the hearing, the district court denied the motion to sever and the case proceeded to trial.

At trial, the jury heard evidence that sometime in December 2003, Childs contacted her friend Christina Lawson and told her that "she had a friend that had a situation with child support." Lawson testified that this friend was Benavides. Lawson further testified that Childs told her that Benavides wanted to "[m]ake the mother go away" and that he intended to "[g]et a hit man." Lawson also explained how Childs told her that Benavides wanted to talk to Lawson about his situation. Benavides believed that Lawson could help him "because she had a father who was murdered by a hit man and an uncle who was speaking of seeking revenge." Lawson then recounted how Benavides approached her one night at a party, talked about his problems with paying Satterfield child support, and told Lawson, "I want her gone. I want her to disappear."

Following further conversations with Childs, Lawson contacted the authorities and an undercover operation was arranged. Detective Scott LaCour was assigned to pose as a hit man. LaCour placed a phone call to Benavides and set up a meeting. At this meeting, Benavides told LaCour that he "wanted someone killed." Benavides gave LaCour maps to Satterfield's house and provided a physical description of Satterfield and her vehicle. LaCour testified that he asked Benavides how much he wanted to pay for the job. Benavides indicated that he was willing to pay 2,000 dollars. LaCour told him that the price was 10,000 dollars and Benavides agreed. LaCour also

2

asked Benavides if he wanted the woman stabbed or shot. According to LaCour, Benavides told him that "he didn't care how it was done." An audio recording and a transcript of this conversation were admitted into evidence.

Benavides testified in his defense. Benavides claimed that he renounced his solicitation in a conversation with LaCour on March 6, 2004. An audio recording and a transcript of this conversation were admitted into evidence. In the district court's charge, the jury was instructed on the affirmative defense of renunciation. *See* Tex. Penal Code Ann. § 15.04 (West 2003).

The jury found Benavides guilty of solicitation of capital murder as charged in the indictment. Punishment was assessed at sixty years' confinement and a $5,000 fine. This appeal followed.

## DISCUSSION

**Denial of motion to sever**

In his first issue, Benavides asserts that the district court abused its discretion in denying his motion to sever and in granting the State's motion to consolidate.

Motions to sever or consolidate trials of co-defendants are governed by article 36.09 of the code of criminal procedure, which provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

Tex. Code Crim. Proc. Ann. art. 36.09 (West 2007).

Severance is mandatory upon a timely motion and upon introduction of evidence which establishes either (1) that there is a previous admissible conviction against one defendant or (2) that a joint trial would be prejudicial to any defendant. *Aguilar v. State*, 26 S.W.3d 901, 903 (Tex. Crim. App. 2000). However, absent such evidence, severance is not a matter of right, but rests within the sound discretion of the trial court. *See Peterson v. State*, 961 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). To show an abuse of discretion, an appellant bears the "heavy burden" of showing clear prejudice. *Id.*

Benavides argued during the severance hearing that his defensive theory of denial[1] and Childs's defensive theories of renunciation and entrapment were mutually exclusive, *i.e.*, the jury, in order to believe one defense, would necessarily have to disbelieve the other. *See Goode v. State*, 740 S.W.2d 453, 455 n.2 (Tex. Crim. App. 1987). However, "mutually exclusive defenses are not necessarily prejudicial." *Qualley v. State*, 206 S.W.3d 624, 636 (Tex. Crim. App. 2006). "To establish prejudice, the defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction." *Id.*

Benavides failed to make such a showing. Benavides did not present any evidence that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the

---

[1] During trial, Benavides's changed his defensive theory to renunciation.

jury from making a reliable judgment about guilt or innocence.[2] "The failure to present evidence in support of the motion is reason enough to sustain the trial court's action." *Sanne v. State*, 609 S.W.2d 762, 776 (Tex. Crim. App. 1980). We overrule Benavides's first issue.

**Factual sufficiency**

In his second issue, Benavides concedes that the evidence is sufficient to support the elements of the offense of solicitation but asserts that the evidence is factually insufficient to support the jury's rejection of his affirmative defense of renunciation.

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

Section 15.04 of the penal code sets forth the requirements for proving renunciation:

> (b) It is an affirmative defense to prosecution under Section 15.02 or 15.03 that under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation or withdrew from the conspiracy before commission of the object offense and took further affirmative action that prevented the commission of the object offense.

---

[2] Nor did Benavides present any evidence that his and Childs's defensive theories were mutually exclusive. *See Goode v. State*, 740 S.W.2d 453, 455 n.2 (Tex. Crim. App. 1987).

5

(c) Renunciation is not voluntary if it is motivated in whole or in part:

> (1) by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective; or

> (2) by a decision to postpone the criminal conduct until another time or to transfer the criminal act to another but similar objective or victim.

Tex. Penal Code Ann. § 15.04.

Benavides argues that the conversation on March 6 between himself and LaCour proves that he "countermanded his solicitation." The relevant portions of the recorded conversation are as follows:

> Benavides: It's too hot. I'm in Houston. I cannot go. That family member I was talking about—it's too hot. A close, personal family member has got an idea that I'm up to something. I don't know how they found out.

> LaCour: Uh-huh.

> . . . .

> Benavides: Okay. This personal, close friend of mine—the family member is my father.

> LaCour: All right.

> . . . .

> Benavides: All right? He will know. All right? He's on to something. He knew for some—I don't—I'm not saying that anybody else said anything. All right?

> LaCour: Then it's got to be on your end.

> Benavides: This is—this is my end. Okay? This is my end. What I'm telling you right now, it is too hot.

> . . . .

6

LaCour:  Uh-huh.

Benavides:  Okay?  For the month of March, it is too hot.  I'm not going to do anything to jeopardize you or me.

. . . .

LaCour:  Are we just going —

Benavides:  — do not —

LaCour:  — to lay low for a while?

Benavides:  Do not—yes.  Do not do anything.  Do not say anything.  Okay?  If you would like for me to contact you after the month of March, I will.  If not—

LaCour:  That's up to you, man.

Benavides:  Okay.

LaCour:  As long as it's cool.  I mean, I don't have a problem with it.  I better not catch any [expletive] heat over it.  You know what I mean?

Benavides:  No.  That's why I'm saying for the month of March.  He will be at both of these parties and he knows already who needs to be there, who's going down that street, and for what for.

. . . .

LaCour:  That's cool.

Benavides:  Okay?  And maybe we can make an arrangement for another job, but that's a later date.

LaCour:  All right.

Benavides:  All right?  For right now, it is too hot.


A reasonable juror could infer from this conversation that Benavides was primarily

concerned about getting caught and that he believed the month of March was "too hot" for LaCour

7

to commit the offense. Benavides states during the conversation that "maybe we can make an arrangement for another job, but that's a later date." There is nothing in the conversation to suggest that Benavides was making "a voluntary and complete renunciation of his criminal objective" as the statute requires. *See id*. § 15.04(b). The statute is clear: "Renunciation is not voluntary if it is motivated in whole or in part by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective; or by a decision to postpone the criminal conduct until another time." *Id*. § 15.04(c).

Benavides also claims that the following evidence proves that he took affirmative steps to prevent LaCour from taking action against Satterfield: (1) he did not give LaCour any money at the time of the solicitation and (2) he did not give LaCour a photograph of Satterfield or her house, the license plate number for her car, or her actual address. Benavides asserts that LaCour would not have committed the offense without the money and without the above information. At most, these are omissions, not "affirmative action to prevent the commission of the offense" as the statute requires. Failure to bring the money required by a hit man does not constitute withdrawal from the crime. *See McGann v. State*, 30 S.W.3d 540, 548 (Tex. App.—Fort Worth 2000, pet. ref'd).

Furthermore, there is evidence in the record that Benavides provided detailed maps to Satterfield's house and a detailed description of Satterfield and the type of car she drove. The jury could have concluded that, if LaCour had been an actual hit man, this would have been enough information for him to find Satterfield.

8

Other than Benavides's testimony that he believed he had renounced the crime, there is no other evidence in the record from which the jury could have concluded that Benavides took the necessary steps to renounce his criminal objective. Considering all of the evidence in a neutral light, there is factually sufficient evidence to support the jury's finding against renunciation. We overrule Benavides's second issue.

**Cross-examination**

In his third issue, Benavides contends that the district court abused its discretion in permitting him to be cross-examined about "the merits of his defense" during the hearing on the motion to sever. The scope of cross-examination is within the control of the trial judge and within the exercise of his sound discretion. *Love v. State*, 861 S.W.2d 899, 902 (Tex. Crim. App. 1993). We will not reverse the trial court absent a clear abuse of discretion. *Chambers v. State*, 866 S.W.2d 9, 26 (Tex. Crim. App. 1993).

The State argues that, once Benavides took the stand at the hearing, the State was permitted to cross-examine him on "any subject matter that is relevant." We disagree. If the accused testifies *during trial*, "he or she is subject to the same rules as any other witness and may be impeached, contradicted, made to give evidence against himself or herself, cross-examined on new matters, and treated in every respect as any other witness, except where there are overriding constitutional or statutory provisions." *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.).

The above rule does not apply, however, if an accused testifies for a limited purpose during a pretrial hearing. "The accused in a criminal case does not, by testifying upon a preliminary matter out of the hearing of the jury, become subject to cross-examination as to other issues in the

9

case." Tex. R. Evid. 104(d). All of the cases the State cites to in its brief concern a defendant's decision to testify during trial and are inapplicable here.

We have found no case that has addressed the applicability of rule 104(d) in a hearing on a motion to sever. However, the rule has been applied in other settings. For example, in *Mendoza v. State*, 959 S.W.2d 321 (Tex. App.—Waco 1997, pet. ref'd), the defendant testified at a bond-reduction hearing about her family relationships and her ability to make bail. *Id*. at 326. On cross-examination, the prosecutor asked Mendoza whether she had committed the offense and inquired about the details of the offense. *Id*. The Waco Court of Appeals held that this questioning violated rule 104(d). *Id*.

Similarly, in *Crosson v. State*, 36 S.W.3d 642 (Tex. App.—Houston [1st. Dist.] 2000, pet. ref'd), rule 104(d) was applied to an evidentiary hearing on a motion to suppress. The First Court of Appeals held that it was constitutional error for the district court to order the defendant to testify to matters outside the scope of his suppression hearing. *See id*. at 645; *see also Simmons v. U.S.*, 390 U.S. 377, 394 (1968) (holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."); *Lopez v. State*, 384 S.W.2d 345, 348 (Tex. Crim. App. 1964) (holding that, should defendant testify at hearing on motion to suppress confession, "the cross-examination of the defendant shall be limited solely to the facts surrounding the voluntariness of the confession, and the defendant shall not be subject to cross-examination except for the limited purpose of facts involving the voluntary nature of his confession, nor shall the defendant be compelled to take the stand upon the trial of the cause upon its merits because of his testimony at this hearing.").

10

However, rule 104(d) "is not intended to immunize the accused from cross-examination . . . when the accused himself injects other issues into the hearing." *Ex parte Homan*, 963 S.W.2d 543, 545 (Tex. App.—Corpus Christi 1996, pet. dism'd). "For example, if an accused testifies to circumstances of the offense, the State may cross-examine him on such issues." *Id*.

Although *Homan*, like *Mendoza*, dealt specifically with a bail-reduction hearing, we see no reason why a similar rule should not apply in a severance hearing. We hold that, in a hearing on a motion to sever, the district court should limit the scope of the accused's cross-examination to issues related to the determination of whether severance is proper. However, if the defendant through his testimony injects other issues into the hearing, the State is permitted to cross-examine him on those issues. *See id*.

Prior to Benavides's testimony, his attorney stated, "This testimony is for the sole purpose of this Motion for Severance and we will invoke the Fifth Amendment for all other purposes." During his direct examination, Benavides testified as follows:

Q. Would you state for the record your defensive theories in this case?

A. Explain further.

Q. How do you expect to defend yourself against this case. What sort of position are you taking as far as how it happened and why—why are you accused?

A. Due to the fact that I didn't want any of this ever to occur.

Q. Can you explain briefly how this all got started and why you're innocent of the charges?

A. Because of a conversation around Christmas of 2003. I was discussing my engagement plans with the other Defendant. She asked how I was going to pay for

11

it because she was aware of my child support situation. I said, "I don't know. It's tough." And she said, "Well, you know, wouldn't it be kind of nice if it just all went away." And I laughed, whatever, and that's when it all got started.

Q. And at no point — or at any point did you agree to have your ex-girlfriend killed?

A. No, sir.

Q. Did you solicit anyone for that purpose?

A. Personally, no.

Benavides's attorney then asked him why Childs may have implicated him in the crime. Benavides answered, "It could be a personal vendetta. Her husband, Jeff Childs and I were childhood friends, 17 years I believe. And I believe that she might have had a bad taste in her mouth for me."

Following this question, Benavides's direct examination concluded. The State then proceeded to extensively cross-examine Benavides. The only specific question Benavides complains of on appeal is the following:

Q: Do you agree or disagree that on the 22nd of February, Sunday, that you met Damon, Scott LaCour, I'm pointing at right here. Sitting right here. And you provided him maps and a description of height and weight of your former girlfriend, the mother of your child?

At this point Benavides asked to invoke his Fifth Amendment right not to incriminate himself. The following exchange occurred:

Mr. Moninger [Benavides's attorney]: I'm going to object on the ground[] it's beyond the scope of the purpose of this testimony.

12

Mr. Waldrip [State's attorney]: Number 1, they called him, and he waived his Fifth Amendment privilege for the purpose of this hearing.

The Court: For the purpose of this hearing, he sure did. He can answer the question[.]

The Witness [Benavides]: I agree.

Mr. Moninger: Your Honor, excuse me. Our waiver was only as to the defensive theory.

The Court: Well, if his defensive theory was that Samantha did it all, I think that the District Attorney's question seems relevant.

Mr. Waldrip: And I believe, if I wrote this down[] correctly you said that you never personally solicited anyone.

The Court: That's what he said.

Benavides proceeded to answer the State's question.

The State then asked Benavides several more questions about the specific details of his defensive theory. Defense counsel objected to several of these questions, disputing their relevance to the severance hearing. In response to one of Benavides's objections, the district court stated,

I think he's probably trying to flush out his theory of varying degrees of culpability, it would appear, and once you're into this mode in this type of a hearing, I think both sides are entitled to flush out the evidence. This is all under 36.09 to determine whether or not we've got mutually exclusive theories. . . . So I've got to let him kind of flush this out it seems to me.

After this explanation, Benavides lodged no more objections to the State's questions.

We conclude that the district court did not abuse its discretion in finding that the State's line of questioning was relevant to determining if severance was appropriate. Benavides

13

concedes in his brief that the purpose of the hearing was to "establish[] a defensive theory." We agree. In fact, determining the exact nature of Benavides's defensive theory was essential for the district court to decide whether the alleged defenses of Benavides and Childs were antagonistic and mutually exclusive.

Benavides's defensive theory, as he explained during direct examination, was that he did not solicit the murder of his ex-girlfriend. Thus, Benavides opened the door to questions by the State concerning the specific details of his denial defense. In permitting the State to inquire into the specific details of Benavides's defensive theory during cross-examination, we conclude that the district court's decision was not "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). We overrule Benavides's third issue.

**Ineffective assistance of counsel**

In his fourth issue, Benevides contends that he was denied effective assistance of counsel during the hearing on the motion to sever. Specifically, Benavides complains that his counsel of record, Glen Peterson, did not appear at the hearing and, instead of seeking a continuance, sent an attorney to represent Benavides who had no felony experience.

The standard announced in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), governs whether Benavides satisfied his burden to prove that his counsel's assistance was ineffective. *See Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). Pursuant to *Strickland*, Benavides must demonstrate that his counsel's performance was deficient, *i.e.*, it fell below an objective standard of reasonableness, and (2) Benavides was prejudiced because a reasonable probability exists that, but for the deficient performance, the outcome of his trial

14

would have been different. 466 U.S. at 687-88, 694; *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005).

We review counsel's representation in its totality, rather than as isolated acts or omissions, and we evaluate the performance from counsel's perspective at trial, rather than in hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). Further, we indulge a strong presumption that counsel's acts and omissions were reasonable and part of a sound trial strategy, and it is the appellant's burden to overcome that presumption with a preponderance of the evidence. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). Our review is highly deferential to counsel, and we will not speculate about counsel's trial strategy. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). The appellant, however, may prevail by providing a record that affirmatively demonstrates counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Mayhue*, 969 S.W.2d at 511. If the appellate record is silent regarding the reasons for counsel's conduct—as it is in most cases—then it is insufficient to overcome the presumption that counsel followed a legitimate strategy. *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999).

Benavides asserts that counsel's performance at the hearing was so deficient that it was "tantamount to having no attorney at all" and asks this Court to "presume" prejudice. *See United States v. Cronic*, 466 U.S. 648, 659 (1984).

In *Cronic*, the Supreme Court concluded that there were some circumstances under which prejudice is presumed, such as when "counsel entirely fails to subject the prosecution's case

to meaningful adversarial testing." *Id*. at 659. This situation may arise when a lawyer, "although physically and mentally present in the courtroom, fails to provide (or is prevented from providing) *any* meaningful assistance." *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005). Prejudice is presumed "only when the defendant demonstrates that counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all." *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000). "When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the per se presumption of prejudice." *Id*. at 284-85.

On this record, we cannot say that Moninger failed to provide Benavides with *any* meaningful assistance during the hearing. Moninger's repeated objections to the State's questioning of his client during cross-examination, thus preserving error on Benavides's third issue on appeal, demonstrate that he provided at least some meaningful representation to Benavides. Thus, we cannot presume prejudice.[3]

Nonetheless, we must still evaluate whether Moninger's or Peterson's performance was deficient under the test articulated in *Strickland*. Benavides has failed to make a showing that Moninger's performance fell below an objective standard of reasonableness. Moninger objected to the State's questions during cross-examination, thus preserving error. He cited relevant case law to the district court. He articulated and explained his client's position. His questions on direct and

---

[3] We note that Benavides's argument that Moninger had no prior felony experience does not give rise to a presumption of prejudice. "Every experienced criminal defense attorney once tried his first criminal case. . . . The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." *United States v. Cronic*, 466 U.S. 648, 665 (1984).

16

redirect examination were consistent with his client's position. When it became apparent that the district court was going to rule against his client, he tried to persuade the district court to grant a continuance. On this record, we cannot say that Moninger's representation was deficient.

Nor can we say that Peterson's performance was deficient. Benavides asserts that Peterson's performance was deficient because he (1) did not attend the hearing on the motion to sever, (2) sent Moninger to represent Benavides instead of requesting a continuance, and (3) did not consult with Benavides prior to the hearing.

"A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time." *Stafford*, 813 S.W.2d at 506. Also, "[i]neffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.' That record must itself affirmatively demonstrate the alleged ineffectiveness." *Bone*, 77 S.W.3d at 835.

On this record, all we know is that Peterson had to be in trial elsewhere on the day of the hearing. We do not know why he did not request a continuance, why he sent Moninger to fill in for him, or why he did not meet with Benavides immediately prior to the hearing. Perhaps Peterson did not request a continuance because he had reason to believe that Moninger would be able to handle the hearing without him and he did not want the hearing delayed. Perhaps Peterson did not meet with Benavides prior to the hearing because he had already discussed the motion to sever with his client at an earlier date. Because we can only speculate as to the reasons for Peterson's decisions, there is not a firm foundation in the record to support an ineffective assistance of counsel claim.

17

Furthermore, we are to consider the totality of representation provided, not isolated incidents. *See Stafford*, 813 S.W.2d at 506. Benavides has not made a showing that the totality of Peterson's representation throughout the entire proceedings fell below an objective standard of reasonableness. On the contrary, it appears from our review of the record that Peterson was a zealous and effective advocate for his client during both the guilt/innocence and sentencing phases of Benavides's trial. Peterson's absence at the hearing on the motion to sever was an isolated incident that he did not repeat.

Additionally, Benavides has not made a showing that a reasonable probability exists that, but for the deficient performance of his counsel, the outcome of his trial would have been different. Benavides points to the fact that the State conducted a "devastating cross-examination" of Benavides during the hearing that was subsequently used against him during trial, and implies that if Peterson had been present during the hearing, Peterson would have somehow been able to prevent the "withering" cross-examination, or at least mitigate some of it. There is simply no basis in the record to support this contention. Moninger's multiple objections to the State's questions during the hearing were repeatedly overruled by the district court. It is quite possible that, even if Peterson had objected more frequently or differently than Moninger, the district court would have still allowed the State to ask its questions.

Furthermore, we cannot say that the jury's verdict turned on the State's cross-examination of Benavides. In addition to Benavides's testimony, the jury considered: (1) the testimony of multiple witnesses who testified to Benavides's culpability, including Scott LaCour, the undercover police officer whom Benavides asked to murder Satterfield, and Christina Lawson, the person whom Benavides approached with his desire to kill Satterfield; (2) multiple

18

recorded and transcribed conversations between Benavides and LaCour; and (3) documents Benavides provided to LaCour identifying the location of the proposed victim.

Benavides has not satisfied either prong of *Strickland*.  We overrule his fourth issue.

## CONCLUSION

Having overruled Benavides's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   April 5, 2007

Do Not Publish