**Raul Saturnino LUGO, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00841–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 17, 1995.

Rehearing Overruled Sept. 14, 1995.

Discretionary Review Refused Dec. 13, 1995.

Joe Edwin Naron, Houston, for appellant.

John B. Holmes, Jr., Carol M. Cameron and Kari Sckerl, Houston, for appellee.

Before WILSON, COHEN and HEDGES, JJ.

## OPINION

WILSON, Justice.

Appellant, Raul Lugo, appeals from a jury conviction for kidnapping. The trial court assessed punishment at five years confinement. Appellant argues, in three points of error, that the trial court erred by (1) refusing to instruct the jury on the defense of mistake of fact; (2) improperly including a definition of the term "parent" in the charge; and (3) including a partial instruction on the defense of mistake of law. We affirm.

**Summary of Facts**

Adriana Cardenas testified that she met and dated appellant while she was separated from her husband. Adriana subsequently gave birth to S.C.,[1] the complainant, on June 1, 1986. Appellant testified he was convinced he was the child's biological father. However, it was not determined by medical testing until October 1992 that appellant was the biological father. Adriana testified that one year after S.C. was born, appellant began coming over to her house, and later to her apartment, and would stand outside and watch her.

The child's grandmother testified that on August 30, 1988, appellant went to her house, where S.C. was living with her mother, her younger sister, her grandparents, and a baby-sitter. The grandmother stated that when she returned home, appellant was sitting outside with the children and the baby-sitter. The grandmother further testified that while she went inside with another child and the baby-sitter, appellant took the complainant.

Adriana testified she did not leave S.C. with appellant, nor did she give the baby-sitter instructions to do so. She stated she did not know at that time appellant was S.C.'s biological father.

Appellant testified at trial that he took the child, and that neither S.C.'s mother nor her grandmother gave him consent to take her. Appellant also testified that prior to taking the child, he did not take legal steps to obtain custody. Appellant added that three days later he took S.C. to Mexico to live with his mother. Appellant further stated he returned to the United States after six months, while the child continued to live with his relatives in Mexico.

---

1. The complainant in this case is a minor, and we do not refer to her by name.

Adriana filed kidnapping charges against appellant the day S.C. was taken. An officer investigating the incident testified that he spoke with appellant's sister and told her appellant did not have legal custody of the child. Appellant testified that in December of that year his sister informed him the police were investigating the matter and that he did not have legal custody of S.C.

Adriana also testified that in May 1992 appellant contacted her about dropping the kidnapping charges in exchange for letting her see the child, and she was able to arrange a meeting at which she planned to take back the child. She testified she told appellant, falsely, that if he let her see S.C. one last time, she would give him money, sign any necessary papers to drop the kidnapping charges, and let appellant keep the child.

The child's mother and appellant testified that at the meeting, which took place in a restaurant parking lot, appellant prevented her at gun point from taking the child back, and police officers responding to the disturbance at the scene released the child to appellant. An officer stated that later that evening, after the child's mother explained the situation to the officers at the station, he and another officer took custody of S.C. from appellant and placed her with Children's Protective Services. The child's mother testified she picked up S.C. that night from CPS.

**Mistake of Fact**

 In his first point of error appellant argues the trial court committed error by failing to include language in the charge instructing the jury on the defense of mistake of fact.

Mistake of fact is a defense to prosecution when the actor, through mistake, formed a reasonable belief about a matter of fact, if his mistaken belief negated the kind of culpability required for commission of the offense. TEX.PENAL CODE ANN. § 8.02(a) (Vernon 1994); *Gallegos v. State*, 828 S.W.2d 577, 579 (Tex.App.—Houston [1st Dist.] 1992, no pet.). A mistake about the existence of a fact which would establish an affirmative defense to an offense, rather than negating an element of the offense, does not raise the mistake of fact defense. *Bryan v. State*, 814 S.W.2d 482, 483 (Tex.App.—Waco 1991, pet. ref'd).

The penal code provides that a person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX.PENAL CODE ANN. § 20.03(a) (Vernon 1994). It is an affirmative defense to prosecution for kidnapping if a defendant can establish that (1) the abduction was not coupled with an intent to use or a threat to use deadly force; (2) the actor was a relative of the person abducted; and (3) the actor's sole intent was to assume lawful control of the victim. TEX.PENAL CODE ANN. § 20.03(b) (Vernon 1994). There is no factual dispute appellant did not intend to use and did not threaten to use deadly force when he took the child from her mother's home.

Appellant claims he was entitled to an instruction on mistake of fact based on his perception that he was a "parent" or "relative" of the child. However, this belief applies to a portion of the affirmative defense to kidnapping, not to the elements of the underlying offense. Assuming appellant correctly believed he was a relative of the child, such a belief would not operate to negate the culpable mental state required for commission of the offense: the intent or knowledge that he was abducting another person. *Bryan*, 814 S.W.2d at 483.

Therefore, we hold it was not error for the trial court to refuse to include the instruction on mistake of fact in the charge, and we overrule appellant's first point of error.

**Definition of "Parent"**

 In his second point of error, appellant argues the trial court committed harmful error by including in the portion of the charge setting out the affirmative defense to kidnapping a definition of the word "parent" from the Texas Family Code, because such a definition is not provided in the penal code.

As noted above, it is an affirmative defense to prosecution for kidnapping that:

(1) the abduction was not coupled with intent to use or threaten to use deadly force;

(2) the actor was a relative of the person abducted; and

(3) the actor's sole intent was to assume lawful control of the victim.

TEX.PENAL CODE ANN. §§ 20.03(b)(1), (2), (3) (Vernon 1994).

The penal code defines the term "relative" as "a parent or stepparent, ancestor, sibling, or uncle or aunt, including an adoptive relative of the same degree through marriage or adoption." TEX.PENAL CODE ANN. § 20.01(3) (Vernon 1994).

The term "parent" is not specifically defined in the penal code. The trial court included in the charge language setting out the affirmative defense to kidnapping including the definition of the term "relative" as provided in the penal code. The court also defined the term "parent" to mean "the mother, a man as to whom the child is legitimate, or a man who has been adjudicated to be the biological father by a court of competent jurisdiction, or an adoptive mother or father, but does not include a parent as to whom the parent/child relationship has been terminated," using former TEX.FAM.CODE ANN. § 11.01(3).[2]

■ Assuming, without deciding, the trial court's definition of "parent" was error,[3] we examine whether the error was harmless or requires reversal. Appellant made a timely objection to the court's use of the family code definition of "parent." Therefore, reversal is required if the error is calculated to injure appellant's rights, which means no more than that there must be some harm to appellant from the error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In other words, an error that has been properly preserved by objection will call for reversal as long as the error is not harmless. *Id.* The degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* Applying these standards to this case, we must determine if a rational

trier of fact might have reached a different result had the assumed error not occurred.

■ The third element of the affirmative defense to kidnapping is that the actor's sole intent be to assume lawful control of the victim. The evidence presented at trial includes the child's original birth certificate, which shows the child was born on June 1, 1986, but does not list the name of the child's father. An application for an amended birth certificate was filed on September 30, 1986, and appears to be signed by both appellant and the child's mother, Adriana Cardenas. The application contains a section that states appellant and Adriana were married at common law as of August 1985. Attached to the application is an affidavit, also apparently signed by both appellant and Adriana on September 30, 1986, that states:

(1) the affiants have lived together since August 1985;

(2) hold themselves out to others as man and wife;

(3) consider themselves married;

(4) have never been married by ceremony or common law to anyone else; and

(5) any prior marriages have been dissolved by law.

An amended birth certificate, dated August 26, 1988, also appears in the record and lists appellant as the child's father. A statement of paternity, signed by appellant and dated June 19, 1992, also appears in the record. In the statement, appellant acknowledges he is the father of the child. A portion of that statement also reads: "I was not married to the mother of this child at the time of conception of the child or at any subsequent time."

At trial, the child's mother testified she was married to her husband, Jose Guadalupe Frausto y Rodriguez, at the time the child was born, and that as of the time of trial she was still legally married to him and had not obtained a divorce. The child's mother also

---

2. Act of May 28, 1987, 70th Leg., R.S., ch. 689, § 1, 1987 Tex.Gen.Laws 2546, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 375, § 1, 1989 Tex.Gen.Laws 1477 (current version at TEX.FAM. CODE ANN. § 11.01(3) (Vernon Supp.1995)).

3. Under the facts of this case, the court's definition of parent would seem to exclude appellant as a matter of law. If the definition is correct, and appellant's status to the child falls outside the definition, then appellant would not be entitled to submission of the affirmative defense on the second element: that he was a relative.

denied signing the application for the amended birth certificate or the attached affidavit. She stated she had never seen those documents before trial, had not signed them, and added that what purports to be her signatures on them are not in her handwriting. Cardenas further stated she never lived with appellant and never gave him permission to take the child. On cross-examination, Cardenas testified she initially thought her husband was the child's father.

Appellant testified the child's mother kept "bothering" him about getting married after the child was born. Appellant stated the child's mother told him she was already married at the time, but he added she never showed him any proof of her marriage. He testified the child's mother signed the application for amended birth certificate and accompanying affidavit. He added that after the application was filed, it was his understanding he had the right to see, support, and possess the child. He stated he did not seek legal custody of the child prior to taking her in August 1988.

Appellant stated the child's mother lived with other men after the child was born and he was concerned this would affect the emotional well-being of the child. When questioned on cross-examination about why he took the child, appellant stated he thought the child's mother was not taking care of her and the child was wearing the same clothes all the time. Appellant admitted he took the child, and that neither the child's mother nor her grandmother gave him consent to do so.

■ Once the State has established the elements of kidnapping, the burden shifts to appellant to establish all three elements of the affirmative defense set forth in section 20.03(b). It is appellant's burden to prove, by a preponderance of the evidence, his sole intent in taking the child was to assume lawful control over her. By his own testimony and the statement of paternity, appellant concedes he was not married to the child's mother either by ceremony or by common law, and contradicts the statements in the affidavit accompanying the application for amended birth certificate. He also took no legal action to establish custody rights before August 1988, and did not have the consent of the child's mother to take her.

The record reflects appellant was not a beneficiary of any judicial action awarding him custody of the child, was not married to the child's mother either by ceremony or common-law, and was not acting as agent of anyone with lawful control over the child when he took the child out of the country. His status was simply that of biological parent of the child.

■ We do not decide whether appellant's actions would fall within the boundaries of the affirmative defense had he been legally married to the child's mother, Adriana Cardenas. However, appellant's status as presumed biological parent and, for purposes of our review, in possession of a valid birth certificate naming him as a father at the time of the kidnapping, is not sufficient to establish his legal authority to take the child and could not support a conclusion by the jury that his sole intent was to assume lawful control of the child.

■ We assume the phrase "lawful control" contained in the third element of the affirmative defense to mean control based on law as distinguished from appellant's, or any defendant's, personal conceptions of right and wrong regarding taking the child. To determine what rights appellant had under law to the child, we necessarily return to the family code, which is instructive in determining "lawful control" under element three. Because appellant is not a parent under the family code definition, he could not assert "lawful control" under that provision. Further, we find no Family Code provision establishing parental rights, or any other rights, to the child solely on the basis of possession of a birth certificate naming him father when it is conceded the child was born to a woman married to another man. We find no other law upon which appellant could argue he was assuming lawful control of the child when he took her. We conclude appellant presented no evidence to support the third element of the affirmative defense.[4]

---

**4.** See, e.g., Green v. State, 881 S.W.2d 27, 28–29 (Tex.App.—San Antonio 1994, no pet.).

Because appellant did not present evidence supporting all elements of the affirmative defense, we conclude a rational trier of fact would not have reached a different result even if the trial court had omitted the definition of "parent" in the charge. Accordingly, we hold any error that may have occurred as a result of the trial court's instructed definition of "parent" was harmless. We overrule appellant's second point of error.

## Mistake of Law

■ In his third point of error, appellant argues the trial court included in the charge a portion of the language setting out the mistake of law defense, but erroneously failed to include the entire section of the Penal Code defining the defense, and in doing so misstated the law to the jury.

The Texas Penal Code provides it is no defense to prosecution that an actor was ignorant of the provisions of any law after the law has taken effect. TEX.PENAL CODE ANN. § 8.03(a) (Vernon 1994). The code further provides it is an affirmative defense to prosecution that an actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon an official statement of law contained in an order or grant of permission by an administrative agency, or a written interpretation of the law in a court opinion or made by a public official. TEX.PENAL CODE ANN. §§ 8.03(b)(1), (b)(2) (Vernon 1994).

In its charge to the jury, the trial court stated "[i]t is no defense to prosecution that the defendant, [appellant], was ignorant of the provisions of any law after the law had taken effect." We find this language precisely tracks that of penal code section 8.03(a). However, the trial court did not include the provision of the penal code setting out the affirmative defense of mistake of law or the limited circumstances in which it applies.

The appellant does not argue that the mistake of law defense was raised by the evidence adduced at trial and that he was entitled to an instruction on that issue in the charge; instead, he argues that by only including section 8.03(a) of the penal code, and omitting sections 8.03(b)(1), (b)(2) and (c), the trial court misstated the law to the jury in the charge.

Assuming the trial court's decision to include the language in the charge concerning ignorance of the law was error, we examine whether the error was harmless or requires reversal. Appellant made a timely objection to the court's use of the language he asserts was error. Therefore, reversal is required if the error is calculated to injure appellant's rights, which means no more than that there must be some harm to appellant from the error. *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved by objection will call for reversal as long as the error is not harmless. *Id.* The degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.*

The charge language concerning ignorance of the law is a correct statement of the law applicable to any prosecution for any offense and tracks the language of the statute. Appellant does not explain how the trial court's inclusion of such language harmed him, and after examining the entire jury charge, the record of the evidence presented, and the argument of counsel, we hold a rational trier of fact would not have reached a different result had the language regarding ignorance of the law been omitted. We conclude any error caused by the trial court's decision to include such language was harmless.

Further, appellant does not argue he was entitled to an instruction on the defense of mistake of law. Therefore, we hold the trial court properly omitted language regarding that defense. We overrule appellant's third point of error.

Finding no reversible error, we affirm the judgment of the trial court.