NUMBERS 13-06-308-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GABRIEL RODRIGUEZ PENA, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 331st District Court of Travis County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza


 Appellant, Gabriel Rodriguez Pena, was convicted by a jury of aggravated assault
with a deadly weapon and assessed punishment at fifteen years' imprisonment. Tex. Pen.
Code Ann. §§ 22.01, 22.02(a)(2) (Vernon Supp. 2006). (1) By two issues, appellant
challenges his conviction. Appellant contends the trial court erred in: (1) refusing to submit
an instruction on mistake of fact, and (2) allowing the State to cross-examine a defense
witness regarding appellant's decision to not plead guilty. For the reasons set forth below,
we affirm.

I. Factual and Procedural Background

 On Thanksgiving Day, November 24, 2005, forty-five-year-old Dean Reigel was
working as a courier when he stopped to pump gas at the "Best Stop Food Market"
convenience store. Reigel went inside the store to pre-pay for the gas. When he returned
to his truck, he had to move it because it was too far from the pump. Twenty-four-year-old
appellant was also pumping gas. However, appellant parked his car perpendicular to the
pumps apparently blocking Reigel's truck. Appellant rudely told Reigel that he should have
pulled up to the first pump when he got there. Reigel responded by explaining that a car
was there at the time. Appellant then approached Reigel, placed his hands on Reigel's
chest, and then shoved Reigel about three feet back. Although Reigel did not threaten
appellant, the two continued to exchange profanities. Reigel admitted he told appellant
"crank up your ignorant rap music and get out of here you coward." 

 Ali Barkat, the owner of the store, testified he was sitting in his car, parked in front
of the store, reading the newspaper when the incident occurred. He looked up from his
paper when he heard arguing, and although he could not hear all that was said, he did hear
appellant say, "you don't know who you are fucking with." Barkat saw appellant approach
Reigel and push him. He testified that Reigel did not do anything in response, but just stood
there. Barkat then witnessed appellant walk over to his vehicle, and thought appellant was
going to leave. However, instead of leaving, appellant popped open his car trunk and
retrieved a baseball bat. Appellant then approached Reigel, who was still pumping gas, and
"audibly" hit Reigel on his head with the baseball bat. Reigel fell and hit the ground. 
Appellant then returned to his car and left. Barkat phoned 911, gave the operator a
description of appellant's car and proceeded to help Reigel, who was bleeding and
apparently in shock. 

 Victor Silva, a "Best Stop" employee who was working at the time of the incident,
testified he observed appellant push Reigel. After appellant pushed Reigel, Reigel returned
to his truck and continued pumping gas. Silva testified that Reigel was not acting in a
threatening manner and had his hands down by his side. Silva heard appellant tell Reigel,
"you're lucky there is [sic] witnesses because I would beat you up. I could really mess you
up." He heard appellant and Reigel arguing while pumping gas. He testified that when
appellant finished pumping gas, appellant got in his car and was leaving, when Reigel
walked in front of his truck and called out to appellant something like "run away little girl or
something." (2) Appellant then exited his car, retrieved a baseball bat from his trunk,
approached Reigel and struck him in the face with the bat. Reigel fell to the ground. Silva
testified before getting out of his car, appellant removed his license plate from view (which
was located on the inside of the back window). Silva did not recall hearing Reigel make any
threats or act aggressively toward appellant. Silva was able to identify appellant in a photo
line-up at the police station.

 Rosalinda Rivera was with appellant at the time of the incident. Detective Deborah
Acosta of the Austin Police Department testified that she spoke with Rosalinda about the
incident. Rosalinda did not want to cooperate, but later informed Acosta when appellant
was at her home. Acosta went to Rosalinda's home and questioned appellant about the
incident. Appellant told her that Reigel called him a name and "kind of brushed alongside"
him. Appellant claimed Reigel pushed him and he responded by pushing him off. Appellant
claimed they started arguing back and forth and that he punched Reigel three times "hard"
in the face. Appellant again denied using a bat.

 Reigel was hospitalized overnight as a result of his injuries. His skull was fractured
in three places and he suffered a broken jaw. Doctors had to wait one week for the swelling
to subside before repairing the fractures with three steel plates. The treating physician
testified that a bat used in the manner described by Reigel was an instrument capable of
causing death or serious bodily injury. 

 The jury was charged on both aggravated assault and the lesser-included offense
of assault. At the jury's request, the trial court ordered a read-back of testimony as to
whether Barkat and Silva had an "unobstructed view" of the incident. The jury then notified
the court that it was dead-locked 11 to 1. The trial court gave a supplemental "Allen"
charge. The jury then returned a verdict finding appellant guilty of aggravated assault with
a deadly weapon. 

 At the punishment phase, the State introduced evidence of appellant's prior
convictions: one class B misdemeanor for theft, two state jail felonies for unauthorized use
of a motor vehicle, and another state jail felony for possession of a controlled substance. 
In addition, the State introduced live testimony regarding appellant's two prior assault
convictions. One of the incidents involved a situation where appellant grabbed a man's
neck, threw him on a sofa, and hit his knee. The other incident involved a situation where
appellant tried to hit the fifty-nine-year-old mother of a girl he dated, with, of all things, a
baseball bat. 

 Appellant's father testified that appellant attended special classes and had been
diagnosed with Attention Deficit Disorder ("ADD"). He also testified that appellant visited
with a psychiatrist for his bipolar disorder. Appellant's father explained that, as appellant
got older, he started making bad choices but had nonetheless taken responsibility for his
choices.

 After hearing evidence, the jury sentenced appellant to fifteen years' imprisonment. 
This appeal ensued. 

II. Mistake of Fact Instruction

 By his first issue, appellant maintains that the evidence justified an instruction on
mistake of fact. We do not agree. The Texas Penal Code provides that a person commits
the offense of aggravated assault if a person intentionally, knowingly, or recklessly commits
an assault, which either causes serious bodily injury, or is effected by the use of a deadly
weapon. See Tex. Pen. Code Ann. §§ 22.01, 22.02. To raise the defense of mistake of
fact, appellant must have shown that through mistake, he formed a reasonable belief about
a matter which negated the culpability required to commit aggravated assault. See Tex.
Pen. Code Ann. § 8.02 (Vernon 2003); see also Miller v. State, 815 S.W.2d 582, 585 (Tex.
Crim. App. 1999); Thomas v. State, 855 S.W.2d 212, 214 (Tex. App.-Corpus Christi 1993,
no pet.) (indicating that mistake of fact applies only if a defendant's mistake affects the
mens rea for the offense charged). 

 Appellant contends that through mistake, he formed a reasonable belief that Reigel
consented to the assaultive conduct. Under Texas Penal Code section 22.06, "The victim's
effective consent or the actor's reasonable belief that the victim consented to the actor's
conduct is a defense to prosecution under section 22.01 (Assault), 22.02 (Aggravated
Assault), or 22.05 (Deadly Conduct) if: (1) the conduct did not threaten or inflict serious
bodily injury . . . ." Tex. Pen. Code Ann. § 22.06 (Vernon 2003). However, "[a] mistake
about the existence of a fact which would establish an affirmative defense to an offense,
rather than negating an element of the offense, does not raise the mistake of fact defense." 
Lugo v. State, 923 S.W.2d 598, 601 (Tex. App.-Houston [1st Dist.] 1995, writ ref'd). 
Appellant's assertion that he was mistaken about Reigel's consent to the assaultive conduct
does not raise the defense of mistake of fact because such evidence would not negate the
fact that appellant possessed the mental state required to commit aggravated assault. See
id. Accordingly, appellant's first issue is overruled. (3)

III. Cross-Examination

 By his second issue, appellant contends the trial court erred in permitting the State
to cross-examine a witness regarding appellant's decision to not plead guilty. The State
claims appellant failed to preserve the issue for appeal because he did not renew his
objection when the complained-of evidence was subsequently introduced. We agree.

 Appellant's complaint stems from the direct and cross-examination of his father
regarding appellant's acceptance of responsibility for his actions. On direct examination,
defense counsel questioned appellant's father as follows:

Q: [Appellant] has been in trouble with the law on a number of occasions,
and he has basically accepted responsibility; is that right?


A: Ever since he has been, like I said, maybe since he's been in school,
first or second grade on up. He has never-he has tooken [sic] the
responsibility a lot of times; he's made choices to say, you know what,
just lock me up. He has never come to me to ask me for money for a
lawyer or anything. Just says, you know what, let me just do my time
and we'll let it go. So, yeah, he has tooken [sic] responsibility for his
deal and he is going to take it again.


 On cross-examination, the State questioned appellant's father as follows:


Q: Sir, I just have one question for you. You mentioned earlier that ever
since first or second grade [appellant] has . . . taken responsibility
when he has done something bad, right?


A: That's what I said.


Q: And you said that every time he has been in trouble, all of those
convictions, that he took responsibility? 


A: As far as I know, the ones that I have been-had any knowledge of, he
is just, go ahead, whatever.


Q: And you also said he is taking responsibility now?


A: He has no choice.


Q: Which leads me to my next question. He is not really taking
responsibility, is he, because he never admitted to it?


 [Defense Counsel]: Judge, I'm going to object to the question. It is a
comment on the failure of [appellant] to testify at
punishment, and as such-


 [The Court]: I think he is referring to the plea.


 [State]: That is what I'm referring to.


 [The Court]: I will overrule the objection. I think he is referring
to the defendant's plea.


 [Defense Counsel]: Well, for the record, [appellant] did not enter a
plea.


 [The Court]: Did not enter a plea, exactly. That's exactly
correct.


Q [State]: In other words, he didn't plead guilty to this
offense, correct.?


A: No, he didn't . . . I am not saying taking responsibility for what
happened out there, as far as I am the one that initiated or caused this
to happen. I'm not saying that. I am saying that if this Court deems
whatever it deems, then we have no choice. But I am not saying that
I am responsible for what happened. I am not saying that [appellant]
is responsible for what happened. 

 It is a well-settled principle that to preserve error for review on appeal, a defendant
must object timely, specifically, and receive an adverse ruling at trial. Tex. R. App. P.
33.1(a); Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000); Turner v. State, 805
S.W.2d 423, 431 (Tex. Crim. App. 1991); Jaynes v. State, 216 S.W.3d 839, 850 (Tex.
App-Corpus Christi 2006, no pet.). The objecting party must continue to object each time
the objectionable evidence is offered. Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App.
2003); Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999); Ethington v. State,
819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991); Jaynes, 216 S.W.3d at 850. A trial court's
erroneous admission of evidence will not require reversal when other such evidence was
received without objection, either before or after the complained-of ruling. Jaynes, 216
S.W.3d at 850 (citing Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). This
rule applies whether the other evidence was introduced by the defendant or the State. Id. 
 There are two exceptions to the contemporaneous objection requirement: an
appellant may preserve error without lodging an objection every time objectionable
testimony is offered if the appellant (1) requests a running objection to the testimony, or (2)
objects outside the presence of the jury in accordance with Texas Rule of Evidence
103(a)(1). Geuder, 115 S.W.3d at 13-14; Martinez v. State, 98 S.W.3d 189, 193 (Tex.
Crim. App. 2003); see Tex. R. Evid. 103(a)(1). Appellant did neither. 

 We conclude that appellant has not properly preserved error because he did not
renew his objection when the State resumed questioning and explicitly asked appellant's
father if appellant had pleaded guilty. Therefore, we overrule appellant's second issue.

IV. Conclusion

 The judgment of the trial court is affirmed.


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 9th day of August, 2007.

1. Appellant refused to enter a plea. Accordingly, pursuant to article 26.12 of the Texas Code of Criminal
Procedure, the trial court entered a plea of "not guilty" for him. See Tex. Code Crim. Proc. Ann. art. 26.12
(Vernon 1989). 
2. Reigel denied making this statement.
3. Given our disposition, we need not address appellant's remaining contentions as they relate to his first issue. 
See Tex. R. App. P. 47.1.