# NO. 12-21-00123-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHNNY LEE EVANS, SR.,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Appellant Johnny Lee Evans, Sr. appeals his conviction for kidnapping. In four issues, Appellant challenges the sufficiency of the evidence and argues that the trial court erred by failing to properly instruct the jury, the prosecutor struck at him over the shoulders of defense counsel during closing argument, and his twenty-five-year sentence, which the trial court ordered would run consecutively to his sentence in another case, is grossly disproportionate and constitutes cruel and unusual punishment. We affirm the trial court's judgment.

## BACKGROUND

Appellant was charged by indictment with kidnapping his infant son, J.E.[1] He pleaded "not guilty," and the matter proceeded to a jury trial. Sergeant Destry Wallsworth of the Tyler Police Department testified that J.E.'s mother, N.D., reported the kidnapping at 1:31 a.m. N.D. testified that she had left J.E. in the care of another adult at her residence. Wallsworth was dispatched to investigate, and he learned from other investigating officers that Appellant was a suspect. Detective April Molina of the Tyler Police Department also responded to the scene. According to N.D. and Wallsworth, Appellant was not identified as the father on J.E.'s birth certificate, and N.D. and Appellant did not have a custody agreement. Additionally, N.D. explained that she and

---

[1] *See* TEX. PENAL CODE ANN. § 20.03 (West 2019).

Appellant never married, Appellant was not supporting J.E., Appellant moved to Dallas, and Appellant had not visited the child. N.D. further testified that she did not consent to Appellant taking J.E.

N.D. testified that before the kidnapping occurred, she received threatening messages from Appellant about coming to take J.E. Detective Dennis Mathews testified that upon performing a forensic examination of N.D.'s phone, he found messages from Appellant to N.D., in which Appellant threatened to take J.E. According to N.D., the residence where she and J.E. lived was in horrible condition, lacked running water, and was infested with rats.

Investigating officers made contact with Appellant using N.D.'s cell phone. Appellant initially told investigating officers that J.E. was with a family member, and although Appellant denied being in the Tyler area, officers who were pinging Appellant's cell phone knew that Appellant was not being truthful. Appellant eventually told Wallsworth that he was at an apartment in Tyler with J.E., and when Wallsworth went to that location, he found J.E. inside the apartment with Appellant's teenage daughter. The apartment belonged to the mother of Appellant's daughter's friend, who N.D. did not know. Appellant's daughter testified that Appellant instructed her to tell law enforcement that his aunt dropped off J.E.

Appellant and his daughter continued to tell officers that another individual brought J.E. to the apartment, but Appellant ultimately confessed that he took J.E. from N.D.'s residence. Wallsworth testified that Appellant "even explained in detail that he sat up and watched . . . the mother of the child[] leave the [residence]. He described what she was wearing[,] and he even described things around the residence . . . that he wouldn't know unless he was over at the residence." Wallsworth testified that Appellant "basically stalked them like a lion stalking [its] prey."

Appellant admitted to Wallsworth that after he watched N.D. leave the residence, he "snuck in and took the child[.]" Wallsworth explained that Appellant initially tried to enter through a bedroom window, which made too much noise, so he entered N.D.'s residence through the unlocked front door. Appellant's daughter told Wallsworth that Appellant asked her to lie about how J.E. got to the apartment, and she told officers the truth about what transpired after Appellant asked the officers to tell her that he no longer wanted her to lie. Wallsworth testified that Appellant told him J.E. was asleep when Appellant took him from the residence, and Wallsworth testified that J.E. was not in imminent danger. N.D. testified that when the Department removed J.E., she

2

learned that J.E. had "an enormous amount" of illegal drugs in his system. According to Wallsworth, Appellant could have called law enforcement, and law enforcement would have checked on J.E.'s welfare. Because N.D.'s residence was infested with rats and lacked running water, Wallsworth contacted the Texas Department of Family and Protective Services after arresting Appellant.

Appellant testified that he was unaware that he was not listed as the father on J.E.'s birth certificate. Appellant explained that prior to the day he took J.E., he was concerned about J.E.'s "well-being, his safety, the people that he was around[,] and the things that [were] going on with the people that he was around." Appellant testified that he did not contact the authorities to check on J.E.'s welfare because he feared that J.E. would be taken from N.D. if they saw the conditions in which J.E. and N.D. were living. Appellant explained that when he saw N.D. get into her car and leave the house, he knocked on the front door, which "just came open[,]" and he could hear J.E. crying. He denied telling officers that he first attempted to enter through a window. Appellant stated that when he entered N.D.'s residence, he saw "J.E. laying in the bed with nothing on but a diaper, and he was crying, all red, and his eyes [were] puffy." According to Appellant, "you could smell feces, you could see feces on the wall, . . . rats running around in the room on the floor, rats in the living room on the couch[.]" Appellant testified that he saw drug paraphernalia, including crack pipes and bags of "weed" and cocaine, and he could smell drugs. Another individual was asleep in bed, but that person did not respond when J.E. was crying, so Appellant then picked up J.E. and left the residence.

Appellant explained that he called his daughter and told her he was coming to the apartment with J.E. Appellant also called his mother, who told him that police officers were at her home, so Appellant contacted Wallsworth. Appellant admitted lying to Wallsworth when he told him he was forty-eight miles away because he feared that J.E. would be taken from him. Appellant ultimately disclosed his actual location to law enforcement officers, and he met them outside the apartment building. Appellant denied intending to hide or conceal J.E. or to prevent his liberation. During cross-examination, Appellant testified that he lied to the officers when he told them that J.E. was asleep when Appellant entered the residence, and he asserted that J.E. was crying. Appellant's mother testified that Appellant suspected that N.D. might be using drugs either one day or a few days before he took J.E.

3

The jury found Appellant "guilty" as charged, found the allegations in two enhancement paragraphs to be "true" pursuant to Appellant's pleas of "true," and assessed punishment at twenty-five years of imprisonment. The trial court ordered that Appellant's sentence would run consecutively to his twenty-year sentence for possession of a controlled substance in trial cause number 241-1084-20.[2] This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In issue one, Appellant challenges the legal sufficiency of the evidence supporting his conviction.

### Standard of Review and Applicable Law

The *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We examine the evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also "'determine whether the necessary inferences are reasonable based upon the combined

---

[2] *See **Evans v. State**, No. 12-21-00039-CR, 2022 WL 1038046 (Tex. App.—Tyler Apr. 6, 2022, no pet. h.) (mem. op., not designated for publication).

and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17).

**Analysis**

A person commits the offense of kidnapping "if he intentionally or knowingly abducts another person." TEX. PENAL CODE ANN. § 20.03(a) (West 2019). "'Abduct' means to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found[.]" *Id*. § 20.01(2)(A) (West Supp. 2021). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id*. § 20.01(1). Restraint is without consent if it is accomplished by any means if the victim is a child less than fourteen years old and the "parent, guardian, or person . . . acting in loco parentis has not acquiesced in the movement or confinement." *Id*. § 20.01(1)(B)(i). "Restraint" is the *actus reus* of abduction, while the specific intent to prevent liberation by secreting or holding another where he is not likely to be found is the *mens rea*. *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). Therefore, the State must prove that the defendant restrained another with the specific intent to prevent liberation by secreting or holding the person. *Id*. The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding the victim in a place where he is unlikely to be found. *Id*. "'Intent can be inferred from an accused's conduct, remarks, and the surrounding circumstances.'" *West v. State*, 406 S.W.3d 748, 759 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *Kenny v. State*, 292 S.W.3d 89, 95 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd.).

The jury heard evidence that Appellant waited outside N.D.'s residence for her to leave, entered N.D.'s residence, removed J.E. from the residence without N.D.'s knowledge or permission, and took J.E. to the apartment of a person N.D. did not know. From said evidence, the jury could reasonably infer that Appellant intentionally or knowingly abducted J.E. *See* TEX. PENAL CODE ANN. § 20.03. The jury further could reasonably infer from said evidence that Appellant intended to prevent J.E.'s liberation by secreting him in a place where he was not likely to be found. *See id*. § 20.01(2)(A). Based on the combined and cumulative force of the evidence and reasonable inferences therefrom, we conclude that the jury was rationally justified in finding beyond a reasonable doubt that Appellant kidnapped J.E. *See Jackson*, 443 U.S. at 318-19, 99 S.

Ct. at 2789; ***Brooks***, 323 S.W.3d at 895, 899 n.13; ***Clayton***, 235 S.W.3d at 778; ***West***, 406 S.W.3d at 759; *see also* TEX. PENAL CODE ANN. § 20.03.  Accordingly, we overrule issue one.


## INSTRUCTIONS TO THE JURY

In issue two, Appellant contends the trial court erred by refusing the instructions he requested regarding his affirmative defenses.  Specifically, Appellant maintains that the trial court should have instructed the jury regarding his affirmative defense of necessity, as well as the affirmative defense found in Section 20.03(b) of the Texas Penal Code.

**Standard of Review and Applicable Law**

When reviewing alleged charge error, we determine whether error existed in the charge and, if so, whether sufficient harm resulted from the error to compel reversal.  ***Ngo v. State***, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).  If no error occurred, our analysis ends.  *See* ***Kirsch v. State***, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  If the defendant does not object to the alleged charge error at trial, we may reverse the judgment only if the error is so egregious that the defendant did not receive a fair and impartial trial.  ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see also* ***Herron v. State***, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).  However, if the defendant timely objected to the alleged error in the trial court, then we must reverse if the error is calculated to injure the defendant's rights, "which means no more than that there must be *some* harm to the accused from the error.  In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless."  ***Almanza***, 686 S.W.2d at 171.  "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole."  ***Id***.

The trial court must instruct the jury on the law applicable to the case.  TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).  "The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense."  TEX. PENAL CODE ANN. § 2.04(c) (West 2021).  "It is well settled that a defendant has a right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence."  ***Cocke v. State***, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006) (citations omitted).  To raise a

defensive issue, the evidence must raise each element of the claimed defense. ***Stefanoff v. State***, 78 S.W.3d 496, 499 (Tex. App.—Austin 2002, pet. ref'd). "If evidence is such that a rational juror could accept it as sufficient to prove a defensive element, then it is said to 'raise' that element." *Id*. To be entitled to a necessity instruction, a defendant must admit to both the act and the culpable mental state of the charged offense. ***Juarez v. State***, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010).

The issue of whether a defense is supported by evidence "is a sufficiency question reviewable on appeal as a question of law." ***Shaw v. State***, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (footnote omitted). We review the evidence offered in support of a defensive issue in the light most favorable to the defense. ***Bufkin v. State***, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); ***Shafer v. State***, 919 S.W.2d 885, 886 n.1 (Tex. App.—Fort Worth 1996, pet. ref'd).

**<u>Necessity Instruction</u>**

An actor's conduct is justified by necessity if (1) he reasonably believes the conduct is immediately necessary to avoid imminent harm, (2) "the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct[,]" and (3) a legislative purpose to exclude the claimed justification "does not otherwise plainly appear." TEX. PENAL CODE ANN. § 9.22 (West 2019). To be entitled to an instruction on necessity, a defendant must present evidence that (1) he reasonably believed a specific harm was imminent and (2) he reasonably believed the criminal conduct was immediately necessary to avoid the imminent harm. ***Pennington v. State***, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "'Imminent' means something that is impending, not pending; something that is on the point of happening, not about to happen." *Id*. Harm is imminent when an emergency situation exists. *Id*. "In other words, a split-second decision is required without time to consider the law." *Id*. If an ordinary and prudent person in the same circumstances as the actor would believe criminal conduct was immediately necessary to avoid harm, then the actor's belief is reasonable. *Id*.; *see* TEX. PENAL CODE ANN. § 1.07(a)(42) (West 2021) (defining "reasonable belief" as one "that would be held by an ordinary and prudent man in the same circumstances as the actor."). Generally, the determination of the reasonableness of an accused's belief is a fact question and should be viewed from an accused's standpoint when he acted. ***Pennington***, 54 S.W.3d at 857. "Evidence of a generalized fear of harm is not sufficient to raise the issue of imminent harm." ***Brazelton v. State***, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.). "[E]ven a defendant's sincere belief that his or her conduct is immediately

necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of 'immediate necessity' or 'imminent harm' as those concepts are defined in the law." *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd).

As discussed above, Appellant testified that before the day he abducted J.E., he was concerned about J.E.'s safety and wellbeing, and Appellant's mother testified that Appellant suspected N.D. of drug use either one day or a few days before Appellant took J.E. Appellant also testified that he did not contact law enforcement or the Department to check on J.E.'s welfare because he feared that J.E. would be taken from N.D. Additionally, Appellant waited outside until N.D. left before entering her residence. Viewing the evidence in the light most favorable to Appellant, we conclude that the undisputed facts in this case indicate a complete absence of immediate necessity or imminent harm as required for a necessity defense. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(42), 9.22; *Bufkin*, 207 S.W.3d at 782; *Dewalt*, 307 S.W.3d at 454; *Pennington*, 54 S.W.3d at 857; *Brazelton*, 947 S.W.2d at 648. Therefore, Appellant was not entitled to his requested instruction on necessity. *See Stefanoff*, 78 S.W.3d at 499.

## Instruction Pursuant to Section 20.03(b) of the Penal Code

The kidnapping statute provides that it is an affirmative defense that (1) the abduction was not coupled with intent to use or threaten to use deadly force, (2) the actor was a relative of the abducted person, and (3) "the actor's sole intent was to assume lawful control of the victim." TEX. PENAL CODE ANN. § 20.03(b) (West 2019). For a defendant to be entitled to a jury instruction under Section 20.03(b), evidence must be admitted that, if believed, would support all three statutory elements of the affirmative defense. *Green v. State*, 881 S.W.2d 27, 28-29 (Tex. App.—San Antonio 1994, pet. ref'd). Appellant bore the burden of proving, by a preponderance of the evidence, that his sole intent in taking J.E. was to assume lawful control over him. *See Lugo v. State*, 923 S.W.2d 598, 603 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

The phrase "lawful control" in Section 20.03(b) of the Texas Penal Code means control based on the law rather than Appellant's personal conception of right and wrong regarding taking the child, and in determining what rights Appellant possessed to J.E., we turn to the Texas Family Code. *See id.* The Family Code states that a "parent" has the right to physical possession, care, control, and protection of the child. TEX. FAM. CODE ANN. § 151.001(a)(1), (2) (West 2014). A "parent" is defined as "a man presumed to be the father, a man legally determined to be the father,

8

a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law,[3] or an adoptive . . . father[.]" *Id*. § 101.024(a) (West 2019). A man is presumed to be the father of a child if (1) he is married to the child's mother and the child is born during the marriage; (2) he is married to the mother of the child and the child is born before the 301st day after the marriage is terminated; (3) he married the child's mother before the child's birth; (4) he married the child's mother after the child's birth, voluntarily asserted paternity, and either filed his assertion with the vital statistics unit, is named voluntarily as the child's father on the child's birth certificate, or "promised in a record to support the child as his own;" or (5) continuously resided in the household in which the child resided during the first two years of the child's life and represented to others that the child was his own. *Id*. § 160.204(a) (West Supp. 2021).

The undisputed evidence in this case demonstrated that N.D. and Appellant never married, N.D. did not consent to Appellant taking J.E., Appellant was not identified as the father on J.E.'s birth certificate, N.D. and Appellant did not have a custody or visitation agreement, and Appellant did not reside in the child's household for the first two years of the child's life. In addition, no evidence was adduced that Appellant executed an acknowledgment of paternity in the form required by the Texas Family Code. *See id*. § 160.302(a) (West Supp. 2021); *see also id*. § 101.024(a). Therefore, Appellant was merely J.E.'s biological parent; that is, Appellant did not have the lawful rights of possession, custody, and control over J.E. that the Texas Family Code identifies as belonging to a child's "parent." *See Lugo*, 923 S.W.2d at 603 (holding that the appellant had not been judicially awarded custody of the child, was not married to the child's mother, did not have the mother's consent to take the child, and merely possessed the status of biological father). Because Appellant did not present evidence that his sole intent in taking J.E. was to assume lawful control over him, Appellant was not entitled to his requested instruction regarding the affirmative defense set forth in Section 20.03(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 20.03(b); TEX. FAM. CODE ANN. §§ 101.024(a), 151.001(a)(1), (2), 160.204(a); *Lugo*, 923 S.W.2d at 603; *Green*, 881 S.W.2d at 28-29.

---

[3] An acknowledgment of paternity must, among other things, be in a record, signed under penalty of perjury by the mother and the man seeking to establish paternity; state whether genetic testing has been performed and, if so, that the acknowledging man's claim of paternity is consistent with the results of the testing; and state that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of the child's paternity. TEX. FAM. CODE ANN. § 160.302(a) (West Supp. 2022).

Having concluded that Appellant was not entitled to his requested instructions regarding necessity and the affirmative defense contained in Section 20.03(b) of the Penal Code, we overrule issue two.

**IMPROPER ARGUMENT**

In issue three, Appellant argues that the prosecutor struck at him over the shoulders of defense counsel during closing argument.

## Standard of Review and Applicable Law

We review challenges to rulings on objections to closing argument for abuse of discretion. *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). Permissible jury argument generally consists of (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to opposing counsel's arguments, and (4) pleas for law enforcement. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019); *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). "[T]he State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity." *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). A prosecutor risks improperly striking at a defendant over his counsel's shoulders "when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

## Analysis

The record reflects that during his closing argument, defense counsel argued that the prosecutor "just got up here and told you . . that's not immediate, that's not imminent, that's not something that should cause you to take action. Well, forget the law. . . . He is the rescuer. He is the liberator. He is not abducting, he is not capturing, he was not restraining." Appellant complains of the following portion of the State's rebuttal:

> Now, here's another thing that [defense counsel] said that I just – I mean, I almost rolled out of my chair when he said it – and that was the fact that in this liberation process of liberating the child, he didn't do so with the intent to prevent that person's liberation. Folks, if you buy that, guess what, every child that can't crawl or walk or defend themselves that is taken by someone, since they're incapable of fighting back, that can't be kidnapping. That's the most preposterous thing I've

10

> ever heard in my entire life. He's basically saying the only person that could be kidnapped would be someone like me who's capable of fighting back. It's a five-month-old infant.
>
> And let me tell you something, ladies and gentlemen. Here is where you know that they're grasping at straws. And this is the part I knew I was going to get to talk about, just knew it. The evidence is so overwhelming against the defendant that [defense counsel] all but asked you to go back to that jury room and ignore the law[.]

Defense counsel objected that the prosecutor's argument is "not supported by my argument, not supported by the facts." After the trial court overruled the objection, the prosecutor argued, "He basically wants you to ignore the law, go back there, find him not guilty because he did what he thought was right."

In his brief, Appellant asserts that the prosecutor "certainly had the ability to respond to defense counsel's arguments in closing, but he exceeded the boundaries of proper argument by insulting the defense counsel by stating he was asking the jury to ignore the law." We disagree. The prosecutor's argument during rebuttal was in response to defense counsel's statement to the jury to "forget the law." Responding to the arguments of defense counsel is a permissible form of jury argument. *See Milton*, 572 S.W.3d at 239; *Brown*, 270 S.W.3d at 570. Additionally, the prosecutor's argument was not made in terms of defense counsel personally and did not explicitly impugn defense counsel's character. *See Mosley*, 983 S.W.2d at 259; *Fuentes*, 664 S.W.2d at 335. Accordingly, we overrule issue three.

## CRUEL AND UNUSUAL PUNISHMENT

In issue four, Appellant argues that his twenty-five-year sentence, which the trial court ordered would run consecutively to his sentence for possession of a controlled substance, constitutes cruel and unusual punishment and is grossly disproportionate to his crime.

### Preservation of Error

Appellant argues that the twenty-five-year sentence imposed by the trial court amounts to cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, section 13 of the Texas Constitution. However, Appellant did not raise a timely objection in the trial court as to his claim that his sentence violated the Texas Constitution, and he therefore failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver of rights under the Texas Constitution); *see also* TEX. R. APP. P. 33.1(a); *see also* *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (holding that preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion,

and "it [is] incumbent upon the Court itself to take up error preservation as a threshold issue."). Therefore, we will not consider Appellant's argument regarding the Texas Constitution. During the punishment phase, defense counsel asserted that cumulating Appellant's sentence with his sentence for possession of a controlled substance constituted cruel and unusual punishment in violation of the Eighth Amendment.

**Analysis**

"The legislature is vested with the power to define crimes and prescribe penalties." *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statue is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In this case, Appellant was convicted of kidnapping. *See* TEX. PENAL CODE ANN. § 20.03(c) (West 2019) (providing that kidnapping is a third-degree felony offense). The indictment also contained two enhancement paragraphs, which alleged that Appellant had been previously convicted of two prior felonies: (1) theft in 1992 and (2) possession of a controlled substance in 2010. Appellant pleaded "true" to the two enhancement paragraphs, thereby increasing his punishment exposure to that of a first-degree felony. *See id*. § 12.42(d) (providing that if it is shown on the trial of a felony that the defendant has previously been convicted of two felonies other than a state jail felony, and the second previous felony conviction is for an offense that occurred after the first previous conviction became final, the defendant shall be punished for a first-degree felony); *see also id*. § 12.32(a) (setting the first-degree felony punishment range at "life or any term of not more than 99 years or less than 5 years"). The twenty-five-year sentence imposed by the trial court falls within the range set by the Legislature. Therefore, Appellant's punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Furthermore, the Legislature has conferred upon the trial courts the discretion, in the second and subsequent cases, to order that the sentences imposed run consecutively or concurrently. TEX. CODE CRIM. PROC. ANN. art. 42.08 (West 2018). The act of ordering that sentences will run consecutively does not constitute cruel and unusual punishment. *See Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); *Baird v. State*, 455 S.W.2d 259, 259 (Tex. Crim. App. 1970); *Quintana v. State*, 777 S.W.2d 474, 480-81 (Tex. App.—Corpus Christi 1989,

12

pet. ref'd). Nonetheless, Appellant urges this Court to perform the three-part test originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011. Texas courts and the Fifth Circuit Court of Appeals have modified the application of the *Solem* test in light of the United States Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845-46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), in making the threshold determination of whether Appellant's sentence is grossly disproportionate to his crime. In *Rummel*, the Supreme Court addressed the proportionality claim of an appellant who received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id*., 445 U.S. at 266, 100 S. Ct. at 1135. In *Rummel*, the appellant received a life sentence because he had two prior felony convictions – one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id*., 445 U.S. at 266, 100 S. Ct. at 1134-35. After recognizing the legislative prerogative to classify offenses as felonies and considering the purpose of the habitual offender statute, the Supreme Court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id*., 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at bar, Appellant's offense – kidnapping, enhanced by two prior felony convictions to the punishment range for a first-degree felony – is no less serious than the combination of offenses committed by the appellant in *Rummel*, and Appellant's twenty-five-year sentence, stacked onto another sentence of twenty years of confinement, is far less severe than the life sentence upheld in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* is not constitutionally disproportionate, neither is the sentence imposed upon Appellant. Because we do not conclude that Appellant's sentence is disproportionate to his crime, we need not apply

the remaining elements of the **Solem** test.  *See McGruder*, 954 F.2d at 316; *Jackson*, 989 S.W.2d at 845-46.  We overrule issue four.

**DISPOSITION**

Having overruled each of Appellant's four issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 29, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 29, 2022**

**NO. 12-21-00123-CR**

**JOHNNY LEE EVANS, SR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0858-20)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*